[Civ. No. 7685. First Appellate District, Division One.—August 20, 1931.]

HOMER LAUGHLIN ENGINEERS CORPORATION (a Corporation), Appellant, v. J. W. LEAVITT & COMPANY (a Corporation), Respondent.

Newby & Newby, Newby & Palmer and Nathan Newby, Jr., for Appellant.

Ralph E. Jenney, Gibson, Dunn & Crutcher and Norman S. Sterry for Respondent.

PARKER, J., *pro tem.*—This action was brought by plaintiff against defendant to recover damages for an alleged breach of contract. The cause was tried by the court, sitting without a jury, and from an adverse judgment plaintiff prosecutes this appeal. The record is voluminous and comes to us through a bill of exceptions. The contentions advanced cover almost the entire law of contracts and appellant urges that the most fundamental principles governing were ignored to its prejudice. There is one important fact, however, upon which both parties agree. It is conceded that the contract in question was never fully performed.

Appellant contends that the failure of performance was on the part of respondent, which failure excused further performance on the part of appellant; respondent, on the other hand, argues that the failure was on the side of appellant. And added to this feature of the case is the claim of respondent that the contract was abandoned by mutual consent. The findings of the trial court upon which rest the judgment, were in favor of respondent.

The contract involved was entered into, between the parties on October 31, 1918. By the terms thereof appellant agreed to manufacture tractors as speedily as possible and to deliver to respondent, as the same should be ordered, at least seventy per cent of the tractor output of the factory, not exceeding five hundred tractors in one year. Respondent agreed to immediately place an order for ten tractors then being manufactured by appellant and to pay down the sum of $21,200, which amount was paid and receipt acknowledged. If appellant should make said tractors or proceed with the work thereon to the satisfaction of respondent, then the latter should from month to month thereafter place orders for more tractors and make payment of a similar sum for each ten tractors ordered. After April 1, 1919, respondent should place orders for and pay for ten tractors or more and thereafter each tractor should be paid for as ordered. Respondent agreed to distribute the said tractors throughout the territory, advertise the same in trade journals, carry parts for the tractors and further agreed to advance to appellant, as might be required, sufficient funds for material and labor sufficient for the manufacture and completion of not less than ten tractors at any one time provided that at all times the appellant should have, to the satisfaction of respondent, well and truly proceeded with all diligence to the manufacture and completion of any orders for tractors placed and should on demand furnish a satisfactory statement of assets and liabilities. The appellant in said contract agreed to manufacture the tractors, using the best of materials and workmanship, and embodying therein all new and improved features as might from time to time be invented by appellant or its designing engineer. Appellant further agreed to manufacture and keep on hand in its factory sufficient repair parts to supply the respondent or its agents with such

'repair parts as might be necessary. The respondent was given the exclusive agency for the territory for a term of five years. It was mutually agreed that, as prices were revised, the selling price to respondent should not exceed twenty per cent above the cost of manufacture. The contract further provided for abitration in case of dispute. Here it might be noted, while on the subject of the contract, that there was an apparent ambiguity or uncertainty in that portion thereof providing: "If said party of the first part (appellant) shall make said tractors *or* proceed with the work thereon to the satisfaction of the party of the second part (respondent), said party of the second part shall from month to month hereafter place with the party of the first part orders for tractors . . . and shall make payment," etc. (Italics ours.) The trial court construed this provision to mean and intended to mean: "If said party . . . shall make said tractors *and* proceed with the work thereon," etc. (Italics ours.)

A specific finding was made to the effect that the contract should be read as the parties so intended. Appellant contends that such a finding is erroneous for two reasons. First, that the pleadings contain no prayer for reformation and, second, that the evidence does not support the finding. We are of the opinion that it was within the province of the trial court to construe the contract from a reading of the whole thereof and, where any word or phrase was subject to different meanings, then such meaning should be given as would harmonize with the provisions of the instrument in its entirety and, in arriving at a true construction of the instrument, all of the surrounding circumstances should be considered. It is obvious that the subject of the particular section under present consideration was the satisfaction of the respondent, and it might be noted that the term satisfaction, broadly yet sufficiently defined in similar cases, means the absence of reasonable grounds for dissatisfaction. A strict interpretation of the disputed clause in the disjunctive would result in a construction that would bind respondent in the event that tractors were not being made, if there were no grounds for reasonable dissatisfaction as to the progress of the work; and likewise would respondent be held if tractors were actually being made and yet no effort at all being made to

insure output. As will more fully appear hereinafter, such a construction would do violence to the general intent and purpose of the entire transaction. And there is almost an unanimity of holding to the effect that the terms "and" and "or" may be construed as interchangeable when necessary to effect the apparent meaning of the parties. (*Arnold* v. *Hopkins,* 203 Cal. 563 [265 Pac. 223]; *Willis* v. *Robinson,* 291 Mo. 650 [237 S. W. 1030, 1033]; *Poehlman* v. *Leinweber,* 288 Ill. 58 [122 N. E. 834]; *Kales* v. *Houghton,* 190 Cal. 294–298 [212 Pac. 21].) And the application of the rule announced will be apparent upon a review of the conditions surrounding the parties at the time the contract was executed.

The date of the contract is likewise significant, for many reasons. In October of 1918 the United States was at war and the usual war-time conditions prevailed in every industry. Particularly, was there an era of unprecedented prosperity in farming. All farm products were at the peak price with the supply limited. Every acre of tillable land throughout the United States was being turned into productivity, with a constant and unsatisfied demand for farm machinery of every type. The appellant corporation was in the experimental stage of manufacturing a light farm tractor. The defendant was a distributor of automobiles, with branches throughout the state, and with a well-organized and successful outlet for distribution. A short time before the execution of the contract there had been a farm and tractor exhibition near Los Angeles. As a part of the exhibit was the tractor of appellant. One Bierlein, a visitor at the exhibition, noticed the tractor and seemed pleased with its performance and hopeful of the possibilities offered in its promotion. Pursuing this interest, Bierlein made contract with the officials of appellant company and obtained from it a contract and authority empowering him to secure capital for the manufacture and distribution of the tractors. Thereafter Bierlein began negotiations with defendant corporation, respondent herein, resulting in the contract before us.

The factory of appellant was hardly more than a workshop, experimental to a degree, poorly financed and in no sense a going concern. The tractor itself was hardly more than a design, having given no definite evidence of its

capability to perform satisfactorily under ordinary working conditions. The transaction, on both sides, was really a venture, induced through then existing conditions and predicated upon expectancy rather than assurance. Respondent did advance the sum of $21,200 to start the factory and appellant thereupon undertook the work of producing tractors. One tractor was delivered to respondent at its salesrooms in San Francisco and was put upon display. When a minor demonstration was had the tractor not only failed to perform satisfactorily, but showed up defects in construction and material which destroyed confidence in its ability to ever perform and which rendered more difficult any attempts at distribution. And here it might be further noted that, in all, four tractors were built before and after the alleged breach of the contract and that the net achievement was the operation of two by using the other two as extra parts to make possible the unsatisfactory operation of the two which were used.

In the time intervening between the date of the contract and December 12th, there were many discussions between the principals to the contract. There was reasonable ground for respondent to believe that friction existed in the management of appellant corporation, hindering the output; and that the efficiency of the factory was thus impaired to an extent greatly impeding the output. Also the unsuitability of the tractor as a working machine had become more apparent. As a result no orders were forthcoming from respondent and the entire transaction seemed at a point where action of some sort appeared necessary.

On December 12, 1918, Homer Laughlin, Jr., president of appellant corporation, on behalf of said corporation, addressed and mailed to defendant corporation a letter. This letter reviews some of the difficulties encountered and attempts explanation thereof. The following language is taken from this letter: "I, therefore, beg to assure you 'that we shall be pleased to continue the contract upon your placing immediately your order for the second batch of tractors together with the necessary funds therefor, or—we will mutually agree to cancel the contract delivering the remaining eight tractors of your first order before April 1st, 1919, and leaving you secured as before for their completion. In either case we need your immediate reply.

If the contract is to be cancelled, new arrangements will have to be made immediately to continue our production. If by mutual consent we should cancel the contract I hope that it will be done with that respect and esteem and care for the interests of both parties with which we originally entered the contract. There is nothing herein contained that is for one minute to be construed as an acknowledgment that we are in any manner whatever at fault. Our offer to cancel is only for the purpose of an immediate conclusion. If for any reason our contract is not worth to you what it was at the time you signed it we shall find others who value it more highly.'' Appellant concedes this to be a direct and unequivocal offer of cancellation and abandonment. But, contends appellant, the offer was never accepted and therefore no cancellation resulted.

The trial court found that the offer was accepted and that the contract was by mutual consent abandoned, rescinded and canceled. The finding of the trial court, omitting that part thereof referring to the writing of the letter offering to cancel, is as follows: ''That on receipt of said letter said offer to mutually cancel and abandon the contract was accepted by said defendant, and thereafter the said contract was mutually abandoned by both parties and the plaintiff made no further or other effort to furnish the said defendant any further or other tractors, and the said plaintiff and defendant did negotiate for the repayment to the said defendant of the said moneys advanced by it for the purchase of said original tractors, and said parties did reach an agreement to the effect that one of said tractors delivered to the defendant should be retained by it and that the proceeds of every other tractor which was thereafter manufactured and sold by the plaintiff should be paid to the defendant, and that the proceeds of the other tractors manufactured and sold by plaintiff be retained by the plaintiff until the defendant had been paid the amount advanced by it in the purchase of the said original ten tractors; that before this agreement was reached the San Francisco tractor had been returned by the defendant to the plaintiff's factory, and some time after the making of said agreement the said factory, without consulting said defendant, sold the said tractor and kept the proceeds thereof; that the Los Angeles tractor was retained by the

said defendant; that the said defendant offered and tendered its return to the said plaintiff; that the said plaintiff never took possession of said tractor or received the same; that said plaintiff never carried out the said agreement to pay to the said defendant the purchase price of every other tractor sold by it; that plaintiff only manufactured two additional tractors besides the two delivered to said defendant, and did not pay to the said defendant the proceeds of the sale of either of said tractors or pay anything at all to the defendant.''

This finding has abundant evidentiary support in the record. As would be inferred there is conflict in some instances, but this was a question for the trial court to determine where the truth might be. There is evidence that upon receipt of the letter, defendant communicated by telephone with Laughlin and did accept the offer of cancellation and that Laughlin in reply merely said ''Thanks'', evidently glad to be through with the matter.

There is further evidence that in subsequent negotiations with other parties, appellant conceded the cancellation of the contract with respondent. It is in evidence that at the time of the execution of the original contract and the payment of the money by defendant, the appellant, to secure the defendant in its payment of some $21,000, had executed and delivered to defendant a deed of trust upon certain real property. After the notice of cancellation and the acceptance as herein detailed, and the failure of other negotiations and after April of 1919, the defendant sought the repayment of the moneys advanced. No claim was then made by appellant of any breach of contract, but the cancellation of the contract was admitted and terms of repayment of the moneys advanced were sought. The deed of trust was foreclosed and the property sold and still no claim by appellant that the amounts claimed were not due. In the time between the cancellation and the sale under the deed of trust, appellant sought to secure the aid of defendant in a distribution plan after manufacture by an independent concern; and still no claim of breach. All in all, the conduct of the parties amply demonstrates that all concerned considered the contract at an end. The factory went into the list of nonproducers and nothing further seems to have been done with the tractor thereafter. The venture was,

manifestly, a complete failure. The tractor as made was an almost total loss; the materials used in the manufacture would not stand up, the design was more theoretical than practical and the expense of upkeep was prohibitive. It is true, as appellant points out, that there are some isolated facts which might be construed as inconsistent with a finding of abandonment or cancellation; on the other hand, these same facts might be explained from the circumstances existing. But, if not explained, the effect would simply be to create a ` conflicting factual condition with the power to determine resting with the trial judge whose determination, if reasonably supported, would be final.

 While we feel that the holding of a cancellation sufficiently disposes of the issues here presented we may add, however, that the trial court found, too, that even before cancellation the contract had been breached by the appellant and that by reason thereof respondent was excused from further performance. This finding likewise finds ample support in the record. We do not feel compelled to analyze every word of conflicting testimony, but our conclusion from a reading of the entire transcript is that the appellant's cause in the court below was absolutely without foundation of fact and that the appeal prosecuted from the judgment is frivolous and without merit of any kind.

Appellant has taken detached portions of the testimony favorable to its contentions and surrounded these with abundance of citation of elementary principles. Where conflict appears, it has argued its own testimony, regardless of the trial court's findings. It is demonstrated by an overwhelming mass of evidence that appellant has suffered no loss through any act of respondent. Appellant sought to recover $750,000 as damages claimed for the breach of a contract which, from its very inception, was hardly more than an experiment, and after the experiment had failed. It seeks these damages after it had, in almost every particular, as found by the trial court, breached the contract, while the defendant was not in default; and seeks these damages in the face of a mutual cancellation and abandonment. The contract as executed could never have been performed as the conditions existed and, at the time of mutual cancellation, all parties were fully aware of that fact: If appellant could prevail, it would make a wonder-

ful success of an admitted failure reversing the old idea of a Pyrrhic victory. Appellant complains of other errors of the trial court. Each of these claims is predicated upon rulings or orders affecting appellant's claim of damage.

Inasmuch as the trial court found that plaintiff was entitled to no damage by reason of the fact that defendant had not breached the contract and that the same had been canceled by mutual consent, any error in computing damage becomes immaterial, as does any error in the restriction of a pleading or the refusal of permission to file additional or supplemental pleadings on the question of damages. Such other specifications of error as are urged center about the controversy in the main and the foregoing disposes thereof.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.