[S. F. No. 16145. In Bank.—November 6, 1940.]

D. LYLE GHIRARDELLI, Respondent, v. PENINSULA
PROPERTIES COMPANY (a Corporation), Appellant.

·Carlyle Miller for Appellant.

Oliver Dibble and Samuel I. Jacobs for Respondent.

EDMONDS, J.—The dispute which resulted in this litigation arose over the construction of an agreement made by Peninsula Properties Company, the owner of Rio Del Mar Country Club, in connection with a conditional sales contract executed by it. The appeal is from a judgment in favor of the assignee of the seller, respondent herein.

In 1930, the respondent's assignor sold furniture for the club to an amount of approximately $31,000. Practically all of the purchase price was represented by four promissory notes. Later there was a dispute concerning the performance of this contract by the seller. A supplemental agreement was then executed by the parties providing for certain weekly payments of principal and interest on two notes aggregating $21,000.

A second supplemental agreement was afterward executed. This contract, dated in February, 1932, recites that $11,845 being then due and unpaid, the buyer agrees to transfer certain membership notes of the club to Harold E. Haven, as trustee, for collection and application of the net proceeds upon this amount. It stipulates that the seller shall look solely to the net proceeds of these notes for payment of the amount due as long as the trustee continues to collect them. Other provisions are: "It is further agreed that if the sum of Eleven Thousand ($11,000.00) Dollars is not paid through the aforesaid collections or by . . . (the buyer) prior to

March 1st, 1933, then upon a full accounting and the return of all uncollected notes, the . . . (seller) shall be restored to all rights it has under the original conditional sales agreement as to any moneys that may then be due to it." "The . . . (seller) further agrees that if and when there has been collected upon the . . . notes a sum sufficient so that after the . . . authorized deductions there remains a balance payable to it of Eleven Thousand ($11,000.00) Dollars, that it will execute a bill of sale of the . . . furniture and furnishings and release the . . . (buyer) from all obligations on the . . . agreement."

No accounting was made by the trustee until January 22, 1937. On that date he rendered an account showing that on May 30, 1932, the unpaid amount had been reduced to $10,916 and that $5,680 was due on January 1, 1937. The seller's action, commenced April 27, 1937, is upon a common count for the balance due for goods sold. Judgment was rendered in favor of the seller for the sum of $5,685 with interest from the date of suit and $1,000 as attorney's fees.

Appellant's principal contention is that its obligations under the original contract have been released by the fulfillment of the terms and conditions of the second supplemental agreement. It asserts that the quoted provisions of this agreement must be construed as a promise on the part of the seller to execute a bill of sale to the furniture whenever the unpaid balance upon the sale price of the furniture was reduced to an amount less than $11,000. Furthermore, it argues that an action for a balance due is not one of the remedies agreed upon by the parties but, assuming it may be stated upon the terms of the original contract, it is now barred by the statute of limitations. Another contention is that the trial court erred in awarding attorney's fees and interest.

██ In the interpretation of a contract, it is a fundamental rule that all of the writing must be read together and every part interpreted with reference to the whole, so that each provision therein will be effective for its general purpose. (*Lemm* v. *Stillwater Land etc. Co.*, 217 Cal. 474 [19 Pac. (2d) 785] ; *Homer Laughlin Eng. Corp. v. J. W. Leavitt & Co.*, 116 Cal. App. 197 [2 Pac. (2d) 511] ; Rest., Contracts, sec. 235 [d] ; Williston on Contracts, Revised ed., sec. 618.) Applying this rule, it is apparent that the purpose of the February, 1932, agreement was to provide a special means for the

payment of the amount then owing by the buyer. In consideration of the transfer to the trustee of the notes held by the buyer upon its membership accounts, the seller, for a stipulated period, agreed to waive the right to proceed under its contract and to look for payment solely to the collections made by the trustee. But it certainly could not have been the intention of the parties that when only $845 of almost $12,000 then owing was paid to the seller, it would then execute a bill of sale to the furniture and release the buyer from all of its obligations. Such a construction entirely ignores the further provision that if $11,000 was not paid by March 1, 1933, then the seller "shall be restored to all rights it has under the original conditional sales agreement as to any moneys that may then be due to it". But if the "balance payable to it" of $11,000 is construed as the gross amount, less authorized deductions, collected by the trustee and payable by him to the seller, the several provisions of the contract are entirely consistent. This construction may be reasonably drawn from the words used by the parties and it fully supports the trial court's finding that the buyer's obligations under the contract have not been cancelled and that it is not entitled to a bill of sale.

The next question is whether the seller's cause of action is barred by the statute of limitations. The parties agreed on February 2, 1932, that the amount then due upon the contract was $11,845. It is the appellant's contention that under this agreement, an action for a balance due for goods sold and delivered cannot be maintained.

In connection with the conditional sales contract, the buyer executed four promissory notes having different maturities. The latest installment payable upon any of them was due on November 1, 1931. The appellant contends that the statute of limitations then began to run, at the latest, and now bars recovery. This argument is made upon the theory that the seller may only recover under the terms of the notes, or by forfeiture, repossession, and sale. But conceding, the appellant continues, that the first supplemental agreement operated to suspend the running of the statute, this suspension was only effective until March 1, 1933, because of the provision in the latter agreement that if the sum of $11,000 was not paid in accordance with its terms, "then upon a full accounting and the return of all uncollected notes, the first party shall

be restored to all rights it has under the original conditional sales agreement as to any moneys that may then be due to it.'' It was wholly within respondent seller's power, the appellant insists, to render the accounting and return the uncollected notes which were necessary to the seller's cause of action, and the statute began to run when it could have first performed the acts upon which its rights depend. If this contention is correct, then the present suit, commenced four years and two months after the date of the supplemental contract, is barred.

■ The fact that the parties executed promissory notes evidencing the amounts payable under the conditional sale contract does not restrict the seller to an action based upon them. When promissory notes are given in connection with such a contract, they are important in a suit for the balance due on the purchase price only as they indicate more clearly the definite nature of the vendee's promise to pay the purchase price. (*Arther E. Guth Piano Co.* v. *Adams,* 114 Me. 390 [96 Atl. 722].) The notes given are but evidence of promises to pay certain sums at specified dates. Upon default by the purchaser in complying with the terms of such notes, the seller may retake possession of the property, or ratify the contract as one for an absolute sale and sue for the recovery of all moneys payable thereunder. (*Johnson* v. *Kaesar,* 196 Cal. 686 [239 Pac. 324]; and cases cited; *Cocores* v. *Assimopoulos,* 127 Cal. App. 360 [15 Pac. (2d) 892]; *Cummings* v. *Gleason,* 72 Conn. 587 [45 Atl. 353]; *Sager* v. *Schmidt,* 98 Conn. 736 [120 Atl. 504]; *Slocomb* v. *Lurty,* 22 Fed. Cas. 337, No. 12,949; Jones, Chattel Mortgages and Conditional Sales, 6th ed., vol. 3, sec. 1324.)

■ By the terms of the supplemental agreement, these remedies were suspended until the trustee had made a full accounting and returned the uncollected notes. Pending that event, the creditor could not sue for the amount unpaid. The cause of action was not within its control and depended upon an act to be performed by a third person. Under such circumstances the statute of limitations did not begin to run until the performance of the act which was a condition precedent to the commencement of the action. (*Williams* v. *Bergin,* 116 Cal. 56 [47 Pac. 877]; 37 C. J. 954.)

The principles applicable to contracts which include a forfeiture and acceleration clause are likewise relevant in this

connection. For example, where a lessor had the right to declare a lease void if the lessee failed to pay the rent within a stipulated time, it was held that this provision, being for the benefit of the lessor, operated only at his option. The lessee had not paid the rent and later contended that the lease was thereby terminated, but the lessor was allowed to enforce all the rights under it. (*Bank of America etc. Assn.* v. *Moore,* 18 Cal. App. (2d) 522 [64 Pac. (2d) 460].) So, also, upon default in the payment of an installment due upon a promissory note which includes an acceleration clause, although the creditor may sue for the entire amount, as the provision is for his benefit, he need not take advantage of it, and the statute of limitations does not then begin to run. (*Andrews* v. *Zook,* 125 Cal. App. 19 [13 Pac. (2d) 518].)

■ Nor may the buyer's position concerning the trial court's allowance of attorney's fees be sustained. By the original contract, it agreed to pay such fees if the seller employed an attorney to collect any unpaid amount thereunder. The present action falls squarely within that provision.

■ Finally, the appellant declares that the trial court erred in allowing interest on the sum of $11,845 for the period from January 1, 1932, to March 1, 1937, because the supplemental agreement of February, 1932, does not provide therefor. By the terms of that agreement $11,845 was "due on the . . . conditional sales agreement as of January 1, 1932 . . . and the parties . . . desire to provide for a method of payment of said balance. . . . " The account of the parties was thereby stated and the seller agreed to forego its rights under the original contract until March 1, 1933, and the "full accounting" of the trustees to be later made. These provisions clearly contemplated a new basis for payment of the indebtedness. The amount owed by the buyer still remained "due", in the sense that it continued to be an existing obligation payable at a future time. But the creditor could not enforce payment until the trustee rendered his account and the debtor was not in default until that event occurred. (See *Gelgud* v. *Los Angeles Rock etc. Co.,* 14 Cal. App. (2d) 604 [58 Pac. (2d) 673].)

However, the creditor is entitled to interest from the date of the debtor's default in payment, not because of any provision of the contract but as damages for the detention of the amount owing. (*Nesbit* v. *MacDonald,* 203 Cal. 219 [263

Pac. 1007].) It was stipulated that the amount of $5,685.13 sued for and for which judgment was rendered includes $2,554.57 interest accrued to March 31, 1937, the date the trustee rendered his account. As interest is recoverable only from that date, the judgment is modified by striking out the words "the sum of $6,043.64 together with interest thereon from date hereof" and inserting in lieu thereof "the sum of $3,130.56 with interest thereon from March 31, 1937, in the sum of $213.66", and as so modified it is affirmed, without costs on appeal to either party.

Gibson, C. J., Curtis, J., Shenk, J., Carter, J., York, J., *pro tem.*, and Moore, J., *pro tem.*, concurred.