[Civ. No. 17891. Second Dist., Div. Two. Apr. 17, 1951.]

W. W. HOAGLAND et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES, Defendant and Appellant.

Kenneth Sperry for Plaintiffs and Appellants.

Ray L. Chesebro, City Attorney, and William P. Mealey, Assistant City Attorney, for Defendant and Appellant.

McCOMB, J.—*Facts*: Plaintiffs and defendant entered into a contract whereby plaintiffs, contractors, agreed to do certain repair work on the outfall sewer of defendant municipality.

The sewer in question was elliptical in shape approximately 6 feet 1 inch in height and 5 feet in width, and was originally constructed by the use of three concentric rings of brick held together with mortar, referred to as the inner ring, the middle ring and the outer ring. The bricks in each ring were laid edgewise so that each ring was approximately 4 inches in thickness. For a space of about 13 inches on each side of the sewer there is a vertical section that is flat. Above this the ceiling of the sewer is shaped like an arch.

By the terms of the agreement defendant agreed to pay plaintiffs for the work upon the following basis:

"1) Per square foot for removing and replacing brick in the inner ring, $3.40;

"2) Per square foot for removing and replacing brick in the middle ring, $2.30;

"3) Per square foot for removing and replacing brick in the outer ring, $2.50;

"4) Per square foot for repointing existing bricks, $1.80."

The instructions to bidders contained this provision: "The following quantities are approximate only, and are not guaranteed to be correct. They are the quantities, however, which will be used for the purpose of comparing bids:

"1. 44,545 square feet remove and replace brick in inner ring of sewer.

"2. 16,119 square feet remove and replace brick in middle ring of sewer.

"3. 8,470 square feet remove and replace brick in outer ring of sewer.

"4. 22,849 square feet repoint existing bricks."

The specifications provided among other things:

"The quantities of work in any single addition or deduction, or the net total result of all additions or deductions in this contract, shall not change the quantity of work under any item in the Proposal by more than 25% of the original quantity included in such item, provided, however, that if the item comprises less than 10% of the contract cost, this limitation shall not apply."

Plaintiffs' contention is set forth in the following portion of a letter sent to the board of public works, a copy of which was attached to their claim:

"We do not agree with the method of computing the number of square feet of brick work completed under items number 1, 2 and 3; and we believe that we are entitled to additional payments under item number 4, because of a contract provision limiting changes in quantities.

"Payment for removing and replacing brick under items 1, 2 and 3 has been based on quantities determined in the following manner—the surface width of each ring of brick replaced was measured on the face of the brickwork *nearest* to the inner surface of the sewer and this measurement multiplied by the horizontal length of the replaced section was taken as the number of square feet replaced. As shown on the bottom of the attached sketch, this method of determining areas does not provide payment for a segment of brickwork which occurs in each square foot, due to the fact that the brick are laid on a circular surface. We believe that the proper method of determining the area of brick replaced is by using a width dimension measured on the center line of each course of brick and multiplying this figure by the horizontal length.

"The City has computed the surface width of the inner surface of the sewer above the spring line, by assuming a circular section with a 2'-6" radius centered 6-½" above the spring line; this dimension is 8.93 feet. Our company has computed the same dimension measured on the center line of the brick course, and, as shown on the attached sketch, have arrived at a percentage increase of 6.75% to be added to

all brickwork to adjust the City's estimated quantities, to center line computed quantities. In the last paragraph of this letter we are itemizing the additional payments to be made for brickwork under this method of computing quantities.''

After trial before the court without a jury the court found: 1. That defendant had not paid plaintiffs the minimum amount to which they were entitled under their contract, and 2. That the city had correctly computed the amount due for brickwork completed by plaintiffs.

From the portion of the judgment favorable to plaintiffs defendant appeals, and from the judgment against them plaintiffs appeal.

*A. Defendant's Appeal.*

■ *Question: Did the trial court properly award plaintiffs $7,916.28 because defendant had not paid plaintiffs the minimum amount guaranteed by the contract?*

*Yes.* Under the terms of the agreement between the parties it was provided that the total quantity of repointing work would be on 22,849 square feet, and that such footage would not be increased or decreased by more than 25 per cent of said amount.

The evidence discloses that defendant reduced the quantity of said repointing to 10,685.02 square feet, and that plaintiffs were damaged by losing net profits in the sum of $7,916.28. There is no merit in defendant's contention that the provisions in the instructions to bidders reading, ''The following quantities are approximate only and are not guaranteed to be correct. They are the quantities, however, which will be used for the purpose of comparing bids . . .,'' permitted defendant to order any quantity it saw fit because the specifications which must be read in conjunction with the instructions to bidders specifically provided that 22,849 square feet of repointing existing bricks should not be reduced by more than 25 per cent of such contract. ■ It is elementary that in the interpretation of a written contract all of the writing must be read together and every part interpreted with reference to the whole so that each provision therein will be effective for its general purpose. (*Ghirardelli* v. *Peninsula Properties Co.*, 16 Cal.2d 494, 496 [107 P.2d 41].)

■ By applying this rule it is evident that the provisions in the specifications modified the statement in the instructions to bidders. Therefore the trial court's judgment against the city upon this phase of the case was correct.

*B. Plaintiffs' Appeal.*

■   *Question: Did the trial court apply the proper stand-ard of measurement for determining the square feet of brick for which defendant should pay plaintiff?*

*Yes.* Bids were received upon the square foot basis on the contract so far as the inner ring was concerned. The contract provided that plaintiffs should be paid for "square feet re-move and replace brick in inner ring of sewer," and the trial court found, "that in preparing their estimate for said work and in submitting their bid the plaintiffs in truth and in fact based the same on inner surface measurements and hence are not entitled to be paid for said work on any other basis of measurement."

The trial court's finding was supported by plaintiff Hoag-land who testified as follows:

"Q. Now, the quantity of brick required in any given ring, inner or middle or outer ring, the number of brick and amount of brick was not changed by the fact that it was constructed on a curvature, was it? A. I think that is right.

"Q. The same number of brick were used. The difference, caused by the curvature was a matter of different thickness of the mortar, is that right? A. Yes.

"Q. Now, in figuring your cost of doing this job prior to the submission of the bid, submitting your bid figure, you took into consideration the quantity of mortar that would be necessary to be used, did you not? . . .

"A. Yes. . . .

"Q. At the time you were figuring your work and submit-ting your contract price, you knew these bricks were on a curvature, did you not? A. That is correct."

It is thus evident by plaintiffs' own admission that plain-tiffs figured the additional quantity of material rendered nec-essary by the fact that the brick work was to be laid on a curve and that their bid was submitted in accordance therewith. It therefore necessarily follows that if plaintiffs are paid an additional amount by reason of the quantity of work being determined other than upon a square foot basis they will receive more than they are entitled to.

Since the judgment of the court was predicated upon un-ambiguous language in the contract and its finding was sup-ported by the evidence the judgment was correct.

Affirmed.

Moore, P. J., concurred.

WILSON, J.—I dissent.

The findings of the court relating to the method of computation of the amount due and owing to plaintiffs for removing and replacing brick are without foundation in the record.

The evidence, considered in its entirety, sustains plaintiffs' contention as to the manner in which the measurements and computations should be made in determining the number of square feet of brick removed and replaced for which they should be but have not been paid.

The minuscule fragment of evidence quoted in the majority opinion does not sustain the conclusion reached therein nor does it, as declared by the majority, sustain the finding of the court that plaintiffs, in preparing their estimate and in submitting their bid for the work, based the same on the inner surface measurements and that they are not entitled to be paid for the work on any other basis of measurement.

The testimony that the "number of brick" was not changed by the fact that they were laid on an arch and that the difference caused by the curvature "was a matter of different thickness of the mortar" does not sustain the finding. Obviously plaintiffs did not compute the total square footage of the exposed ends of the brick alone without the mortar necessary to hold them in place.

The brick are 4 inches in width and were laid on edge; the radius of the perimeter of the top of the arch is therefore 4 inches greater than the radius of the bottom of the arch; the number of square feet is found by multiplying the distance around the mean perimeter by the horizontal length of the work performed. If the measurement is made upon the perimeter of the top or outside surface of the arch plaintiffs would be paid more than they would be entitled to receive, and if measured along the bottom or inside line of the arch they would not be paid enough.

Plaintiffs offered expert evidence, *of which there was no contradiction*, to the effect that where the contract and specifications do not prescribe the method of measurement the customary practice is to use the method which would most accurately reflect the true quantities of work performed, and that the *only method* of ascertaining the true number of square feet of work performed in removing and replacing brick on an arch is to use the center or mean line of the thickness of the arch, thus basing the computation on the average of the two areas, the upper and lower perimeters; thereby the

result would be the same and the area of surface would be the same as if the arch had been flattened out.

The contract provided that plaintiffs were to be compensated on the basis of a specified sum "per square foot for removing and replacing brick." All documents making up the contract were prepared by agents of defendant and are therefore to be construed most strongly in plaintiffs' favor. The specifications provided that the contractors would be paid "on a price per square foot in place"; no specific method of measurement was provided in the contract.

The only engineer called by defendant to testify on this subject was the deputy city engineer who prepared the specifications. He testified that the only practical method of measuring the brick was to use the inner surface of the curve. This opinion was reached by him because he could not physically put a tape measure around the upper surface. He was apparently not aware of the simple mathematical method, known to any schoolboy, of computing the number of square feet in any curved surface, either on a curve the perimeter of which is known and can be physically touched and measured or on one that is presented in an abstract problem. The inner surface being known, the outer surface, says the beginner's textbook in mathematics, can be easily computed by adding 4 inches to the radius of the curve. Though the witness had prepared the specifications, he expressed his inability to answer a question as to the customary practice, where a contract is silent as to the method of measurement, to adopt the method which will reveal the most accurate measurement. He further testified that he had never been an engineer on a job where a similar question of computation had arisen and that he got his *information from a bricklayer* who was in the employ of the city. It is plain nonsense to accept the evidence of such a witness against that of expert engineers who had had years of experience in similar work involving many millions of dollars.

Not only does the evidence quoted in the majority opinion fail utterly to support the finding but other uncontradicted evidence of plaintiff Hoagland is directly contrary to the findings of the court as shown by his answers to questions asked by the city attorney on cross-examination:

"Q. As a matter of fact, when you bid this job, when you did the first job, and all through the progress of this job, you expected to be paid on the basis of the measurement of the face of the work done, did you not? A. No.

"Q. You did [bid] it on that basis, did you not? A. No; I bid it, when I computed this job, I computed it on the basis of a square foot of brick work, one square foot, four inches thick; in other words, a square foot of brick work laid out."

In answer to questions by the court in seeking additional information with reference to the estimates which he made in preparation for his bid, he stated he figured the volume of material and "worked it out on the square foot basis for a ring of brick four inches thick. *I worked it out on a square foot basis for cement, sand and brick work* . . . I just figured the square feet of brick work laid out."

"Q. Per square foot of the inner surface or the outside surface? A. Per square foot of the *average surface,* because I figured a per square foot of brick four inches thick in determining the volume of material, which would be estimated *on the average surface rather than the inner and outer surfaces :* . . And then I transferred those figures up into this sheet, which in turn were transferred to this sheet, and so *I did not adjust for the lesser quantity which would be obtained by measuring only on the inside surface of the sewer.* I would have had to adjust the figure and increase the per unit cost, and I did not do it. . . .

"Q. And your price per square foot was based on the assumption that the square feet had the same bottom dimension that it had at the top. A. *It would be measured on the median line,* that is correct." (Emphasis added.)

The foregoing testimony is uncontradicted that in making their estimate plaintiffs used for computation the median line between the upper and lower surfaces of the arch, and if they had computed on the basis of the lower surface their "per unit" bid would have been increased proportionately. The only expert evidence in the case is that such is the correct method of computation. There was no evidence, expert or otherwise, to the contrary.

All efforts to obtain statements from the witness that his computations were made on a line other than the median line met with failure. Since the evidence stands without question or contradiction, such method should have been adopted by the trial court. The court's finding has no support in the record and plaintiffs are entitled to the amount sued for.

There need not be a retrial since the court made findings of (1) the quantities if based upon the measurement of the inner or lower surface of each ring of brick removed and replaced and (2) the quantities if measured on the mean line between

the upper and lower surfaces. The finding as to the quantities arrived at by the two respective methods of computation are not questioned by either party, hence it is only a matter of calculating the amount due by multiplying the number of square feet measured on the mean line by the price per square foot specified in the contract for each ring of brick.

The judgment should be modified by striking therefrom the words and figures "Seven Thousand Nine Hundred Sixteen and 28/100 Dollars ($7,916.28)" and inserting in lieu thereof the words and figures "Twenty-one Thousand Seven Hundred Eleven and 60/100 Dollars ($21,711.60)."

A petition for a rehearing was denied May 7, 1951. Wilson, J., voted for a rehearing. Appellants' petition for a hearing by the Supreme Court was denied June 14, 1951.