[Civ. No. 12247. Fourth Dist., Div. Two. Dec. 6, 1973.]

THE PEOPLE ex rel. DEPARTMENT OF PARKS AND RECREATION, Plaintiff, Cross-defendant and Appellant, v. WEST-A-RAMA, INC., Defendant, Cross-complainant and Appellant.

COUNSEL

Evelle J. Younger, Attorney General, Carl Boronkay, Assistant Attorney General, and Jeffrey C. Freedman, Deputy Attorney General, for Plaintiff, Cross-defendant and Appellant.

Gaylord L. Henry, Huntington, Bryans, Harper, Henderson, Burney & Newman-Crawford and Huntington, Bryans, Harper, Burney & Newman-Crawford for Defendant, Cross-complainant and Appellant.

OPINION

KAUFMAN, J.—From a judgment rendered by the superior court after trial to the court with an advisory jury, plaintiff and cross-defendant State of California by and through the Department of Parks and Recreation (hereinafter "State") appeals. Defendant and cross-complainant West-A-Rama, Inc. (hereinafter "West-A-Rama") cross-appeals from the judgment insofar as the court sustained without leave to amend a demurrer to the second cause of action of West-A-Rama's amended cross-complaint.

The dispute between the parties revolves around their respective rights and duties under a concession agreement entered into by State and West-A-Rama's predecessor in interest, Ray Bisel Company, Inc., for the operation of a concession at Salton Sea State Park.

State filed a complaint on October 31, 1969, against West-A-Rama and

others[1] seeking possession of the property covered by the agreement, rents allegedly owing for March through September 1969 and payment of a promissory note having an alleged unpaid balance of $6,528.84.

West-A-Rama filed an answer denying that State was entitled to possession of the property, admitting the nonpayment of rent, but denying that any rents or any amounts under the promissory note were due on the basis of an affirmative defense which alleged in substance that State had breached an implied covenant of good faith by substantially raising its fees to the public for the use of park facilities without notice to West-A-Rama. West-A-Rama also cross-complained for declaratory relief, requesting that the court "declare the respective rights of plaintiff and this defendant under the lease [concession] agreement in question and particularly whether or not plaintiff is entitled to a forfeiture to it by this defendant of the subject buildings, improvements and appurtenances."

Subsequently, West-A-Rama was permitted to file an "AMENDED CROSS COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES." In the second cause of action set forth in the amended cross-complaint, West-A-Rama sought an affirmative monetary judgment in the sum of $63,000, the alleged unamortized value of the improvements made on the premises. The court sustained without leave to amend a demurrer to this second cause of action of the amended cross-complaint on the ground that no claim had been previously filed with the State pursuant to the provisions of the Government Code.[2]

In due course, the case proceeded to trial. Over State's objections, the court received extensive extrinsic evidence under the guise of interpreting the concession agreement, particularly, an addendum thereto. Special ad-

---

[1]Lawrence West was never served, and as to him the action was dismissed.

[2]Government Code, section 945.4 provides in part: "[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board, . . ."

Government Code section 905.2 provides in part: "There shall be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of this part all claims for money or damages against the State:

". . . . . . . . . . . . . .

"(c) For money or damages (1) on express contract, (2) for an injury for which the State is liable or (3) for the taking or damaging of private property for public use within the meaning of Section 14 of Article I of the Constitution."

visory verdicts were taken from the jury.[3] Based on the jury's special advisory verdicts, the trial court found that, under the concession agreement, State was not permitted to repossess concession improvements for nonpayment of rent without paying the unamortized value thereof to West-A-Rama; that the concession agreement embodied an implied covenant that neither party would do anything to deprive the other of its benefits; but that State did not violate that covenant; and that even if State did violate the covenant, West-A-Rama had waived the right to object to such violation; that the value of the concession improvements as of the date of their completion in 1965 was $52,000 as to buildings and $7,725 as to furniture, furnishings and equipment; and that Lawrence West, as an individual, was not a party to the promissory note.

Accordingly, the court rendered judgment in favor of State in the total amount of $9,133.76 representing rent due from March through September 1969 of $2,104.92, $6,528.84 due on the promissory note and $500 attorney fees with respect to the promissory note. The judgment also provided, however: "Defendant and cross-complainant WEST-A-RAMA, INC. is entitled to be paid $52,000.00 less five percent (5%) for each year of the expiration of the lease subsequent to 1965 plus the amount of $7,725.00 . . . before the State enters into possession of the premises described in the concession agreement appended to the complaint on file herein."

### Contentions, Issues and Disposition

Each party advances numerous contentions. There are two contentions, however, one relating to the appeal and one relating to the cross-appeal, both of which are meritorious and compel reversal.

### Admission of Extrinsic Evidence

 State contends that the trial court prejudicially erred in receiving parol evidence on the interpretation of the concession agreement and the addendum thereto. We agree.

 Extrinsic evidence is admissible to interpret or explain the meaning of language used in an instrument when that language is reasonably

---

[3]State objected to, and West-A-Rama demanded, a jury trial. Whatever right to a jury trial there may have been at the outset, it is clear from the record that during the course of the trial the parties agreed to treat the jury as an advisory jury.

susceptible to the interpretation suggested by the extrinsic evidence. (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33, 37-40 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]; *Delta Dynamics, Inc.* v. *Arioto,* 69 Cal.2d 525, 528-529 [72 Cal.Rptr. 785, 446 P.2d 785]; see *Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) But extrinsic evidence is not admissible to give the language used in a written instrument a meaning to which it is not reasonably susceptible. (*Tahoe National Bank* v. *Phillips,* 4 Cal.3d 11, 16-17 [92 Cal.Rptr. 704, 480 P.2d 320]; *Coast Bank* v. *Minderhout,* 61 Cal.2d 311, 315 [38 Cal.Rptr. 505, 392 P.2d 265]; *Imbach* v. *Schultz,* 58 Cal.2d 858, 860 [27 Cal.Rptr. 160, 377 P.2d 272]; see *Parsons* v. *Bristol Development Co., supra,* 62 Cal.2d at p. 865). As a matter of substantive law, extrinsic evidence "cannot serve to create or alter the obligations under the instrument." (*Tahoe National Bank* v. *Phillips, supra,* 4 Cal.3d at p. 23; see Code Civ. Proc., § 1856; *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co., supra,* 69 Cal.2d at p. 39.)

 The pertinent portions of the concession agreement are paragraphs 18 and 20 and the addendum to the agreement which was executed simultaneously with the agreement or shortly after execution of the agreement. Paragraph 18 reads in pertinent part as follows: "18. *Title to Improvements:* Title to all structures or buildings constructed by Concessioner upon the subject premises, and all alterations, additions or betterments thereto made by Concessioner, shall remain in Concessioner until the termination of this contract; and upon such termination, whether by expiration of the term of this contract, cancellation, forfeiture or otherwise, title to said structures, buildings, and all alterations, additions or betterments thereto and all improvements made to or upon said premises shall vest in the State, and said structures, buildings and improvements shall remain upon and be surrendered with the premises as part thereof upon termination of this contract . . . ." Paragraph 20 provides in pertinent part: "20. *Forfeiture:* This contract is made upon the condition that if the rents or other sums which Concessioner herein agrees to pay, or any part thereof, shall be unpaid on the date on wich [*sic*] the same shall become due, or if default be made in any of the terms, agreements, conditions or covenants herein contained on the part of Concessioner, or should Concessioner abandon and cease to use the premises for a period of sixty (60) days at any one time . . . then and in such event, at the option of the State, this contract shall be forfeited, and the State may exercise all rights of entry and reentry upon the subject premises. . . . No default shall be declared by the State as to any breach which may be cured or obviated by Concessioner until the ex-

piration of *thirty (30) days after written notice by the State* to Concessioner of such default and if, during such thirty (30) day period, such default shall have been cured or obviated, provided that only *ten (10) days' written notice shall be required in the case of a default in the payment of rent* or other sums herein provided to be paid by Concessioner." (Italics supplied.) The addendum provides in pertinent part that there be added to paragraph 20 the following: "In addition to the foregoing remedies, State reserves the right to terminate this agreement and all rights of Concessioner thereunder *upon giving Concessioner ninety (90) days notice thereof,* provided, however, that within thirty (30) days of such termination date, State shall be obligated to pay Concessioner the unamortized value of the improvements erected by Concessioner and the furniture, furnishings and equipment installed therein pursuant to the terms of this agreement." (Italics supplied.)

Several witnesses were called and permitted to testify as to the circumstances under which the concession agreement and addendum thereto were executed and their understanding of the meaning of the several provisions quoted above, particularly the addendum. We do not deem it necessary to discuss the testimony of all these witnesses. Crucial testimony was given by Mr. Raymond Bisel, president of Ray Bisel Company, Inc. He testified in substance that, before he executed the concession agreement, he was concerned about the possibility of the concession agreement being terminated by State without compensation for the improvements constructed or provided by his company as concessioner. He, therefore, had a meeting with representatives of State in Sacramento at which it was agreed that an addendum to the lease would be prepared and executed providing for compensation to the concessioner in the event of termination of the agreement for any reason in the amount of unamortized value of concessioner's improvements. Amortization was to be at the rate of 5 percent a year during the 20-year term of the concession agreement. He subsequently received from State the addendum quoted above and understood that it embodied the agreement reached at the meeting in Sacramento.

Based on the testimony of Mr. Bisel and the other witnesses, it was and is West-A-Rama's position that the addendum should be interpreted as requiring State to compensate the concessioner for the unamortized value of the concession improvements in the event of any termination of the concession agreement regardless of the cause of termination. The addendum is not susceptible to such an interpretation. The language of the addendum, which is an addition to paragraph 20 dealing with forfeiture, rather clearly

purports to give State an additional remedy, to wit, the right to terminate the concession agreement without cause upon 90 days' notice, in which event State would be obligated to pay concessioner within 30 days of the termination date the unamortized value of the concession improvements. Moreover, if the addendum were construed as applying to any termination regardless of cause, the several different notice provisions found in paragraph 20 and in the addendum, which we italicized in the quoted portions above, would be in conflict. It is a cardinal rule of construction that a contract is to be construed as a whole, effecting harmony among and giving meaning to all the parts thereof. (Civ. Code, § 1641; *Ghirardelli* v. *Peninsula Properties Co.,* 16 Cal.2d 494, 496 [107 P.2d 41]; *Hoagland* v. *City of Los Angeles,* 103 Cal.App.2d 499, 502 [229 P.2d 823].)

Careful analysis of the testimony of Mr. Bisel discloses that its real thrust is not that the addendum is susceptible to the interpretation that State is obliged to compensate the concessioner for the unamortized value of the improvements in the event of termination of the concession agreement regardless of cause but, rather, that this was the agreement reached by the parties at the Sacramento meeting and that the agreement was not properly embodied in the addendum—in other words, that the contract should be reformed to express the real agreement of the parties. Extrinsic evidence such as that given by Mr. Bisel and the other witnesses would be admissible, of course, in a suit for reformation on the ground of mistake or fraud. (See Code Civ. Proc., § 1856; *Stock* v. *Meek,* 35 Cal.2d 809, 816 [221 P.2d 15]; Witkin, Cal. Evidence (1966) § 738, pp. 683-684 and cases there cited.) West-A-Rama has not proceeded on a reformation theory, however, and, inasmuch as the language of the concession agreement and the addendum is not reasonably susceptible in its present form to the interpretation argued for by West-A-Rama, the testimony of Mr. Bisel summarized above as well as most of the testimony of the other witnesses on this point was inadmissible under the guise of an aid to interpretation of the language of the agreement and the addendum.[4] (*Tahoe National Bank* v. *Phillips, supra,* 4 Cal.3d at pp. 16-17, 23; *Coast Bank* v. *Minderhout, supra,* 61 Cal.2d at p. 315; *Imbach* v. *Schultz, supra,* 58 Cal.2d at p. 861.)

*Compliance with the Claims Statutes*

In its cross-appeal, West-A-Rama contends that the trial court erred in sustaining State's demurrer to the second cause of action in its

---

[4]We observe that upon remand and proper application therefor, the trial court may in its discretion allow an amendment of the cross-complaint to seek reformation. (Cf. *Estate of Horman,* 5 Cal.3d 62, 73 [95 Cal.Rptr. 433, 485 P.2d 785]; *Trower* v. *City and County,* 157 Cal. 762, 769 [109 P. 617].)

amended cross-complaint, which sought monetary damages. It recognizes that the filing of a claim is normally a prerequisite to the maintenance of an action for damages against a public entity. (Gov. Code, §§ 905.2, 945.4 [see fn. 2, *ante*].) It argues, however, that when the state has filed suit on a contract, the defendant should be permitted to cross-complain for damages on the same contract without complying with the claim statutes. We agree.

The state has never been protected by the doctrine of sovereign immunity as to liability on its contracts. (*Chapman* v. *State,* 104 Cal. 690, 694-696 [38 P. 457]; *Souza & McCue Constr. Co.* v. *Superior Court,* 57 Cal. 2d 508, 510 [20 Cal.Rptr. 634, 370 P.2d 338]; *E. H. Morrill Co.* v. *State of California,* 65 Cal.2d 787, 794 [56 Cal.Rptr. 479, 423 P.2d 551]; *Holtzendorff* v. *Housing Authority,* 250 Cal.App.2d 596, 607 [58 Cal. Rptr. 886].) Thus the claims statutes, as respects governmental liability on its contracts, do not relinquish sovereign immunity; they are simply notice statutes, the purpose of which is to permit the governmental entity against whom the claim is asserted to investigate promptly and to have an opportunity to settle without litigation (*Myers* v. *County of Orange,* 6 Cal.App. 3d 626, 637 [86 Cal.Rptr. 198]; *Jamison* v. *State of California,* 31 Cal. App.3d 513, 518 [107 Cal.Rptr. 496]; *Foster* v. *McFadden,* 30 Cal.App. 3d 943, 949 [106 Cal.Rptr. 685]). In the case at bench, State presumably made a full investigation of the respective rights and duties of the parties before initiating this suit on the concession agreement. Presumably, it has already made the decision that the claim should not be settled, since State itself decided to litigate. Since sovereign immunity is not involved and the purposes of the claims statutes have been satisfied, there is no reason to insist upon compliance with the claims statutes as a prerequisite to West-A-Rama's cross-complaint for monetary damages on the contract. On the contrary, it is manifestly unjust to allow State to bring a suit upon a contract and then to use what amounts to a notice statute to shield itself from a cross-complaint asserted by the defendant in the same suit and arising from that very contract.

State argues that cross-complaints are no different from complaints and that if a complaint would be barred, a cross-complaint asserting the same claim is also barred. In support of its argument, State cites *People* v. *Miles,* 56 Cal. 401, *State* v. *Royal Consolidated Min. Co.,* 187 Cal. 343 [202 P. 133]; *People* v. *Buellton Development Co.,* 58 Cal.App.2d 178 [136 P.2d 793] and *Fidelity & Dep. Co.* v. *Claude Fisher Co.,* 161 Cal.App.2d 431 [327 P.2d 78]. The cases cited are unpersuasive. All of the cited cases but the last, whether correctly or incorrectly, were decided upon the ground

that the government is immune to suit under the doctrine of sovereign immunity. As we have previously noted, the doctrine of sovereign immunity has no proper place in a contract action. (*Chapman* v. *State, supra,* 104 Cal. at pp. 694-696 and other cases cited above.) It is true that in *Fidelity & Dep. Co.* v. *Claude Fisher Co., supra,* 161 Cal.App.2d 431, the defendant was precluded from asserting a cross-complaint against the state. The crucial difference between that case and the case at bench is that the state was not the plaintiff in *Fidelity.* The defendant, a contractor, was sued by his surety. The defendant filed a cross-complaint against the surety and the state. Because the defendant failed to comply with the claim statutes, the cross-complaint was dismissed as to the state. Thus, unlike the case at bench, the state did not initiate the lawsuit and the purposes of the claims statutes were not satisfied.

## Disposition

We conclude that the trial court erred in receiving extrinsic evidence to give to the concession agreement and the addendum thereto a meaning to which they are not susceptible and in sustaining State's demurrer to the second cause of action for monetary damages in West-A-Rama's amended cross-complaint.

The judgment is reversed. Each party shall bear its own costs on appeal.

Gardner, P. J., and Tamura, J., concurred.

The petition of appellant West-A-Rama, Inc. for a hearing by the Supreme Court was denied January 31, 1974.