NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 31 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| AECOM, a Delaware corporation,<br><br>                    Plaintiff-Appellant,<br><br>  v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a New York corporation,<br><br>                    Defendant-Appellee. | No. 22-55092<br><br>D.C. No. 2:21-cv-00237-JAK-MRW<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Submitted December 5, 2022[**]
Pasadena, California

Before:  M. SMITH, COLLINS, and LEE, Circuit Judges.

Plaintiff-Appellant AECOM seeks coverage from its property insurer,

Zurich American Insurance Co. ("Zurich"), for losses sustained as a result of the

Covid-19 pandemic.  The district court dismissed AECOM's complaint for failure

to state a claim, and we affirm.

1.  All of the coverage provisions invoked by AECOM in its operative

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without oral argument.  *See* FED. R. APP. P. 34(a)(2)(C).

complaint apply only if there is "direct physical loss of or damage . . . to" covered property or, in specified circumstances, to third-party property.  AECOM alleges that this coverage requirement is met because the presence of Covid virus particles at a given premises "alters the air and airspace in which it is found and the property on which it lands."  Assuming arguendo that the presence of Covid virus particles at an insured's property constitutes "direct physical loss of or damage to" such property, we agree with the district court's conclusion that the "Contamination" exclusion in AECOM's policy precludes coverage here.[1]

a.  The Contamination exclusion excludes from coverage "Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy."[2] The policy defines "Contamination" to mean: "*[a]ny condition of property due to the actual presence of any* foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, *virus*, disease

---

[1] We therefore deny AECOM's motion to stay this matter pending resolution of proceedings concerning the certified question in *Another Planet Ent., LLC v. Vigilant Ins. Co.*, 56 F.4th 730, 734 (9th Cir. 2022) (certifying to the California Supreme Court the question of whether "the actual or potential presence of the COVID-19 virus on an insured's premises constitute[s] 'direct physical loss or damage to property' for purposes of coverage under a commercial property insurance policy").

[2] Unless otherwise noted, our quotations omit any boldface type used in the policy.

causing or illness causing agent, Fungus, mold or mildew" (emphasis added). As noted earlier, AECOM's theory of coverage rests dispositively on the presence of Covid virus particles at its various insured properties and the contention that such presence constitutes direct physical loss of or damage to property. Accordingly, the very thing that AECOM claims triggers coverage—the "presence" of a "virus" and the resulting "condition of property" due to that presence—constitutes "Contamination" under the plain language of the Contamination exclusion. Thus, under the theory of AECOM's own complaint, the Contamination exclusion bars the coverage that AECOM alleges.

b. We reject AECOM's contention that the Contamination exclusion is insufficiently conspicuous, plain, and clear to be enforceable. The exclusion is located directly under a heading that states—in all caps, and in font notably larger than the surrounding text—"EXCLUSIONS," and as we have explained, the import of the language of that exclusion is clear and unambiguous. AECOM points out that the word "virus" does not occur in the exclusion, but only in a definition that is recited more than 40 pages later. But the policy conspicuously uses boldface type throughout to signify terms that are defined elsewhere in the policy, and here the operative language of the Contamination exclusion clearly uses boldface type for the term "Contamination." Moreover, the definition of that term occurs 40 pages later only because the policy adopts the conspicuous, plain,

and clear practice of gathering such defined terms into a single alphabetically organized section prominently labeled "DEFINITIONS." And, as noted, the definition of "Contamination" contained in that section plainly includes a "virus." In view of all of these features, the exclusion is enforceable. *See Nat'l Ins. Underwriters v. Carter*, 551 P.2d 362, 365–66 (Cal. 1976) (holding that an exclusion is sufficient where it is stated in "plain" language under a "bold face heading designated 'EXCLUSIONS'" rather than "concealed in a mass of fine print"); *Cal-Farm Ins. Co. v. TAC Exterminators, Inc.*, 218 Cal. Rptr. 407, 413–14 (Ct. App. 1985) (recognizing *Carter*'s holding that "an exclusion clause [is] conspicuous as a matter of law when it [i]s found in a section under the bold face heading 'EXCLUSIONS,' in printing [whose] size and intensity [is] identical to the rest of the policy").

c. AECOM argues that the Contamination exclusion only applies to "costs" and not to "financial losses." We disagree. The exclusion applies both to "Contamination"—meaning the underlying condition of the property due to the presence of virus—*and* to "any cost due to Contamination." Moreover, such excluded "costs" specifically include an "inability to use or occupy property." All of AECOM's theories of coverage are based on the condition of the property due to the presence of virus particles. They are therefore all based on "Contamination," the resulting "inability to use or occupy" the property, and the

4

costs of remediation, and they all fall within the exclusion.

2. The policy's "Louisiana Endorsement" applies only in Louisiana. AECOM's contrary argument is foreclosed by *American International Specialty Lines Insurance Co. v. Continental Casualty Insurance Co.*, 49 Cal. Rptr. 3d 1, 14–15 (Ct. App. 2006). AECOM argues that *American International* is distinguishable, because here the policy contains a provision (§ 6.21) stating that "[t]he titles of the various paragraphs and endorsements are solely for reference and shall not in any way affect the provisions to which they relate." Because the "Louisiana Endorsement" only mentions Louisiana in the title, AECOM argues, the reference to "Louisiana" has no effect on the provisions set forth in that endorsement, which must be understood as applying across the board. AECOM's argument is not a reasonable reading of these provisions or of the policy as a whole.

No reasonable reader of the policy could fail to recognize that the 31 state-specific endorsements are intended to modify the policy's terms solely with respect to the particular state at issue. Indeed, the policy cannot reasonably be read otherwise, because several of the state-specific endorsements (including the Louisiana Endorsement) make mutually inconsistent replacements of the same underlying sections of the policy, such as the section concerning "suits against the company." *See People ex rel. Dep't of Parks & Recreation v. West-A-Rama, Inc.*,

5

111 Cal. Rptr. 197, 201 (Ct. App. 1973) ("It is a cardinal rule of construction that a contract is to be construed as a whole, effecting harmony among and giving meaning to all the parts thereof."). And by recognizing that the Louisiana Endorsement is limited to Louisiana, we do not thereby use the title to alter the substantive meaning of the operative provisions set forth in that section, which is what § 6.21 addresses. Finally, the fact that Zurich subsequently amended its Louisiana Endorsement to make its state-specific application explicit is irrelevant. *See Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1341 (9th Cir. 1989) ("We reject the Tzungs' reliance on the revised policy for its negative inferences."); *McKee v. State Farm Fire & Cas. Co.*, 193 Cal. Rptr. 745, 748 (Ct. App. 1983) ("We agree that evidence of subsequent revisions of an exclusionary clause in an insurance policy should be inadmissible because it lacks *relevance*, i.e., has no tendency to prove a material fact—is not probative on the issue of liability.").

3. AECOM's argument that the COVID-19 virus was not the "efficient proximate cause" of its financial losses for purposes of the Contamination exclusion fails for the same reasons that we explained in rejecting a comparable argument in *Mudpie, Inc. v. Travelers Casualty Insurance Co. of America*, 15 F.4th 885, 893–94 (9th Cir. 2021).

**AFFIRMED.**

6