PACIFIC GAS AND ELECTRIC
COMPANY, Plaintiff,

v.

CITY OF UNION CITY, Defendant.

Pacific Gas and Electric
Company, Plaintiff,

v.

City and County of San Francisco,
Defendant.

TCI American Cable Holdings,
II, LP, Plaintiff,

v.

City of Union City, Defendant.

Television Signal Corporation,
Plaintiff,

v.

City and County of San Francisco,
Defendant.

Nos. C 99–1805 VRW, C 99–2071 VRW,
C 99–1979 VRW, C 00–2311 VRW.

United States District Court,
N.D. California.

June 25, 2002.

Richard R. Patch, Virginia A. Crisp, Coblentz, Patch, Duffy & Bass, LLP, San Francisco, CA, Mary A. Gandesbery, Pacific Gas & Electric Co., San Francisco,

CA, David Fleisig, Adam S. Chodorow, Pacific Gas & Electric Co., Law Dept., San Francisco, CA, for Pacific Gas & Electric Co.

Gary T. Galliano, Garcia, Bruzzone & Galliano, San Leandro, CA, Charles W. Reese, Timothy A. Colvig, Mark A. Stump, Wulfsberg, Reese & Sykes, PC, Oakland, CA, for City of Union City.

## ORDER

WALKER, District Judge.

Pacific Gas and Electric (PG & E) challenges Union City's and City and County of San Francisco's (CCSF) street damage restoration fees on numerous grounds. In related actions, Television Signal Corporation (TSC) and TCI American Cable Holdings, II, LP (TCI), cable operators for CCSF and Union City, respectively, also challenge the street damage restoration fees. At issue are Union City's "trench cut fee," U.C. Mun. Code, § 12.08.275, and CCSF's "street damage restoration fee," S.F. Pub. Works Code, § 2.4.44.[1] Plaintiffs allege that both fees unconstitutionally impair their franchises with defendants Union City and CCSF.

The complaints in these related actions are substantially similar. All plaintiffs allege:

- Violation of the Contract Clause of the United States Constitution. See PG & E FAC (Doc. # 99–1805:17) at ¶¶ 32–41; PG & E FAC (Doc. # 99–2071:18) at ¶¶ 33–59; TSC Compl. (Doc. # 00–2311:1) at ¶¶ 33–54; TCI SAC (Doc. # 99–1979:14) at ¶¶ 33–43.

- Violation of the Contract Clause of the California Constitution. See PG & E FAC (Doc. # 99–1805:17) at ¶¶ 42–45; PG & E FAC (Doc. # 99–2071:18) at ¶¶ 60–63; TSC Compl. (Doc. # 00–

2311:1) at ¶¶ 55–58; TCI SAC (Doc. # 99–1979:14) at ¶¶ 44–47.

- Violation of the Due Process Clause of the United States Constitution. See PG & E FAC (Doc. # 99–1805:17) at ¶¶ 46–50; PG & E FAC (Doc. # 99–2071:18) at ¶¶ 64–68; TSC Compl. (Doc. # 00–2311:1) at ¶¶ 59–63; TCI SAC (Doc. # 99–1979:14) at ¶¶ 48–52.

- Violation of the Due Process Clause of the California Constitution. See PG & E FAC (Doc. # 99–1805:17) at ¶¶ 51–54; PG & E FAC (Doc. # 99–2071:18) at ¶¶ 69–72; TSC Compl. (Doc. # 00–2311:1) at ¶¶ 64–67; TCI SAC (Doc. # 99–1979:14) at ¶¶ 53–56.

- Violation of Article XIII of the California Constitution. See PG & E FAC (Doc. # 99–1805:17) at ¶¶ 55–57; PG & E FAC (Doc. # 99–2071:18) at ¶¶ 73–75; TSC Compl. (Doc. # 00–2311:1) at ¶¶ 72–74; TCI SAC (Doc. # 99–1979:14) at ¶¶ 61–63.

- Violation of Cal. Govt. Code § 66014. See PG & E FAC (Doc. # 99–1805:17) at ¶¶ 58–61; PG & E FAC (Doc. # 99–2071:18) at ¶¶ 76–79; TSC Compl. (Doc. # 00–2311:1) at ¶¶ 75–78; TCI SAC (Doc. # 99–1979:14) at ¶¶ 64–67.

- Various California breach of contract claims, including equitable relief. See PG & E FAC (Doc. # 99–1805:17) at ¶¶ 62–79; PG & E FAC (Doc. # 99–2071:18) at ¶¶ 80–106; TSC Compl. (Doc. # 00–2311:1) at ¶¶ 79–95; TCI SAC (Doc. # 99–1979:14) at ¶¶ 68–85.

Both TSC and TCI have also alleged violation of 47 U.S.C. § 542, which makes certain excessive fees levied against cable operators illegal. See TSC Compl. (Doc. # 00–2311:1) at ¶¶ 68–71; TCI SAC (Doc. # 99–1979:14) at ¶¶ 57–60.

---

1. For simplicity's sake, the court refers to both the "trench cut fee" and the "street damage restoration fee" as "fees" or the "street damage restoration fee."

Plaintiffs move for partial summary judgment on their Contract Clause claims. See Docs. ## 99–1805:74, 99–1979:30–1, 99–2071:83, 00–2311:18–1. TSC and TCI also move for summary judgment on their claims under 47 U.S.C. § 542. See Docs. ## 99–1979:30–2, 00–2311:18–2. Defendants Union City and CCSF oppose. See Docs. ## 99–1805:81, 99–1979:51, 99–2071:97, 00–2311:48. CCSF also moves for summary judgment against PG & E and TSC for all claims except the Contract Clause claims and for partial summary judgment on the Contract Clause claims. See Docs. ## 99–2071:87, 00–2311:43. For the reasons that follow, the court GRANTS PG & E's partial summary judgment motions against Union City and CCSF (Docs. ## 99–1805:74, 99–2071:83); GRANTS TCI's partial summary judgment motion against Union City (Doc. # 99–1979:30–1); DENIES without prejudice TCI's summary judgment motion against Union City (Doc. # 99–1979:30–2); GRANTS TSC's partial summary judgment motion against CCSF (Doc. # 00–2311:18–1); DENIES without prejudice TSC's summary judgment motion against CCSF (Doc. # 00–2311:18–2); and GRANTS in part and DENIES in part CCSF's summary judgment motions against PG & E and TSC (Docs. ## 99–2071:90, 00–2311:43). Finally, as many of the motions in these cases were cross-docketed as motions in each case, the court terminates all other pending motions. If necessary, a party may re-notice a terminated motion.

## I

These cases arise out of PG & E's agreements with Union City and CCSF to supply gas and electricity to those municipalities and TCI and TSC's agreements with Union City and CCSF, respectively, to provide cable service to those municipalities. For the purposes of these motions, the material facts of each case are undisputed. The facts specific to each of the four related actions are discussed below.

## A

In 1959, the Union City Council enacted two ordinances which granted PG & E gas and electric franchises. Among other things, the franchises allow PG & E to excavate the streets of Union City to facilitate delivery of gas and electricity. In return for the franchises, PG & E pays annual fees based on its gross annual receipts from the sale of gas and electricity within Union City. PG & E alleges that it paid Union City $92,000 under its gas franchise and $330,000 under its electricity franchise in 1999. The franchises were granted pursuant to the Franchise Act of 1937, Cal. Pub. Util. Code § 6201 et seq.

Under the Franchise Act, PG & E "shall pay to the municipality on demand the cost of all repairs to public property made necessary by any of the operations of the grantee under the franchise[s]." Cal. Pub. Util. Code § 6295. Additionally, Union City's municipal code requires excavators to repair any excavation which fails up to one year after the work was completed. UC Mun Code § 12.08.450. An excavator must restore the street "at the place of work to the same condition existing prior thereto" and must "repair and make good any injury or damage to any portion of the street which occurs as a result of work done under the permit * * *." U.C. Mun. Code § 12.08.440, § 12.08.450.

The franchise further requires that PG & E "shall construct, install, and maintain all pipes, conduits, poles, wires and appurtenances in accordance and in conformity with all of the ordinances and rules adopted by [Union City's] legislative body * * * in the exercise of its police powers and not in conflict with the paramount authority of the State * * *." Cal. Pub. Util. Code § 6294.

While Union City had not previously required excavators to pay a trench fee, on November 10, 1998, the Union City Council added § 12.08.275 to the municipal code. That section provides, in part, that:

Any person, corporation, agency or entity including any Department of the City of Union City or any other governmental agency or authority that is required to obtain a permit to excavate or do other work in the public streets or alleys under City of Union City Municipal Code Chapter 12.08 shall pay a Trench Cut Fee. At the time of obtaining any permit required under this code, a Trench Cut Fee in an amount established by resolution adopted pursuant to this Ordinance by the City Council shall be paid to the City for deposit into the Trench Cut Fee Special Fund.

U.C. Mun. Code § 12.08.275. Also on November 10, 1998, the Union City Council passed Resolution No 9423–98 which sets the trench cut fee at $17.30 per lineal foot of trench excavated. The imposition of this fee was a sharp change from over 40 years of prior practice.

Union City enacted the trench cut fee based on findings made by CHEC Consultants Inc. (CHEC) that appear in a report dated October 1998. Union City commissioned the study by CHEC to determine the effects of excavation of city streets. The CHEC study concluded that trenching weakens pavement adjacent to the trench and that the cost of repairing that damage is $17.30 per lineal foot.

PG & E disputes Union City's contention that a properly restored trench causes damage to Union City's streets. PG & E appears to question the methodology as well as the conclusions of the CHEC study. While the parties dispute whether trenching causes adjacent damage as reported by the CHEC study, this dispute is not material to the motions before the court.

B

In May 1967, Union City enacted Ordinance No. 71–67 (the "enabling ordinance") which specified the terms and conditions of any future cable television franchise. TCI Request for Judicial Notice (RJN) (Doc. # 99–1979:38), Exh. A. Granted pursuant to the Franchise Act of 1937, Cal. Pub. Util. Code § 6201 et seq., the cable franchise incorporates the terms of the Franchise Act discussed above. In addition, similar to the other franchises at issue here, the municipal provided:

Any franchise granted pursuant to the provisions of this chapter shall authorize and permit the grantee to engage in the business of operating and providing a CATV system in [Union City] and for that purpose to erect, install, construct, repair, replace, reconstruct, maintain and retain in, on, over, under, upon, across and along any public street such [equipment and property] as may be necessary and appurtenant to the CATV system * * *.

U.C. Ordinance 71–67, TCI RJN (Doc. # 99–1979:38), Exh. A at § 4. The municipal code also required the grantee to pay for the cost of street work performed as a result of the grantee's failure "to commence, pursue, or complete any work required * * * to be done in any street or other public place * * *." Id. at § 13.

In December 1979, Union City enacted Ordinance 186–79, which amended the municipal code to provide a specific franchise fee of 5% and required that the grantee "restore street and paved area pursuant to City specifications." U.C. Mun. Code § 5.28.367.

On November 10, 1998, Union City enacted its trench cut fee, see UC Mun Code § 12.08.275, which applies to all excavation work on public streets, including that performed by TCI pursuant to its cable franchise. The imposition of this fee was a

sharp change from over 30 years of prior practice. Again, this trench cut fee was enacted after the CHEC study found that the pavement adjacent to a repaired trench had structural damage. As with PG & E, TCI disputes the findings of this study, but that factual dispute is not material to the motions at bar.

## C

In 1939, San Francisco granted PG & E franchises to sell gas and electricity within the city. The franchises authorize PG & E to excavate the streets of San Francisco to install, repair or maintain gas and electric facilities. PG & E paid an initial fee of $200,000 for each franchise and continues to pay under the franchises an annual percentage of its gross profits. According to PG & E, it paid approximately $1.8 million for its gas franchise and $2.1 million for its electricity franchise in 1999.

Under the franchises, PG & E also agreed to pay the City "on demand the cost of all repairs to public property made necessary by any of the operations" of PG & E. Franchise at § 7(b). Furthermore, CCSF's Public Works Code has long required PG & E to restore streets to "as good a condition" as they were in prior to excavation by repairing failed trenches or paying the city to do the work. S.F. Pub. Works Code § 342.

Like the Union City franchises, the CCSF franchises provide: "The grantee shall (a) construct, install and maintain all [poles, wires, conduits,] pipes and appurtenances in conformity with all the lawful ordinances, rules and regulations heretofore or hereafter adopted by the Board of Supervisors, or other legislative body of the city, in the exercise of the police powers of the city * * *." Franchise at § 7(a). Additionally, by 1992, the Public Works Code required PG & E to pay permit fees and administrative fees to compensate the

city for the costs of inspection and administration. S.F. Pub. Works Code § 352.

In December 1998, CCSF amended the Public Works Code to impose a "street damage restoration fee." S.F. Pub. Works Code § 2.4.44. The fees, which became effective January 1, 1999, vary from $3.50 per square foot of excavation for roads less than five years old to $1.00 per square foot for streets up to twenty years old. For roads over twenty years old no fee is required. *Id.* PG & E is still required to repair trenches that fail. S.F. Pub. Works Code § 2.4.70—2.4.73. In 1999 (excluding December), PG & E paid approximately $120,000 in restoration fees. The imposition of these fees is a radical departure from over 60 years of prior practice.

As in its case against Union City, PG & E disputes the validity of the studies upon which CCSF relied. CCSF points to two studies, the "SFSU study" and the Department of Public Works panel study. CCSF also references an economic analysis by William B Marcus, the "economic report." The two studies conclude that cuts in pavement reduce the life span of the pavement. The economic report estimates the cost of repairing this excavation damage at $5.25 per square foot. Again, PG & E disputes CCSF's contention that a properly-restored trench causes damage to CCSF's streets.

## D

In April 1964, CCSF enacted ordinance No 105–64, granting a cable television franchise to TSC. The ordinance created:

A franchise to build, construct, locate, maintain, and operate a Community Antenna System in the City and County of San Francisco, authorizing the conduct of the business of, and right, power, authority and privilege to conduct the business and to build, construct, equip, * * * maintain and operate in, or on, or

under, or over, the present and future streets * * * [such equipment or property] for the purpose of operating and conducting a Community Antenna System.

TSC RJN (Doc. # 00–2311:20), Exh. A at § 1.

As with the other franchises at issue, TSC was required to pay for the cost of any street repair work done by CCSF as a result of TSC's failure to "commence, pursue or complete" street work. See id at § 16. Though there were several amendments to the franchise over the next 30 years, none of these amendments mentioned the payment of any separate or additional fees to excavate CCSF streets until CCSF enacted the street damage restoration fee ordinance, imposing fees up to $3.50 per square foot to excavate any CCSF street. The imposition of these fees is a radical departure from over 30 years of prior practice.

## E

As the above discussion demonstrates, the factual backgrounds of the four cases before the court are very similar. The franchises entered into between plaintiffs and the two cities are, in all relevant respects, the same. All require plaintiffs to restore excavated roads to the same condition they were in before excavation and all state that plaintiffs must comply with ordinances passed by the cities pursuant to their police power. In addition, both cities maintain that they were unaware of possible damage arising from trench cutting before the mid 1990s, well after any of the franchises at issue were created and in sharp contrast to over 30 years of prior practice. While not at issue in this motion, the cities rely on several studies which purport to prove that excavation of streets causes permanent damage; plaintiffs disagree that these studies provide evidence of such damage.

The procedural history of three of the four cases is also substantially similar. PG & E and TCI filed their three actions in 1999 within the requisite statute of limitations time period; both plaintiffs also complied with the California Government Tort Claims Act. TSC also filed its original action in 1999 within 120 days of the effective date of CCSF's ordinance; however, the court dismissed the action without prejudice on June 28, 2000, because TSC had failed to serve CCSF its complaint. TSC refiled its action on June 29, 2000, approximately 18 months after the ordinance became effective. In addition, TSC did not file a claim pursuant to the California Tort Claims Act prior to filing this action.

## II

In reviewing a summary judgment motion, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion. The burden of establishing that there is no genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the nonmoving party would bear the burden of proof at trial, the moving party may meet its burden by pointing out—not by a conclusory statement but by demonstration—the absence of evidence to support the nonmoving party's case. *Id.* at 325–26, 106 S.Ct. 2548. Summary judgment is granted only if the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c).

## III

CCSF moves for summary judgment on all claims by PG & E and TSC except for the Contract Clause claims with respect to the street damage restoration fee only. Several of its arguments apply to both PG

& E and TSC; however, with respect to TSC's claims, CCSF also argues that TSC did not comply with the requirements of the California Tort Claims Act, Cal. Govt. Code § 900 et seq., and did not file the action within the statute of limitations period for its state law claims and federal constitutional claims.

In discussing the substantive arguments of CCSF's motion, the court turns first to CCSF's arguments specific to TSC.

### A

CCSF challenges TSC's claim alleging violation of 47 U.S.C. § 542. Section 542 provides a cap of 5% for any franchise fee paid to a local public entity by a cable operator. See 47 U.S.C. § 542(b). CCSF asserts that its street damage restoration fee is exempt from this cap because it is a non-discriminatory fee assessed to all utilities and therefore comes under the safe harbor of 47 U.S.C. § 542(g)(2)(A), which states:

> [T]he term "franchise fee" does not include * * * any tax, fee, or assessment of general applicability (including any such tax, fee, or assessment imposed on both utilities and cable operators or their services but not including a tax, fee, or assessment which is unduly discriminatory against cable operators or cable subscribers).

The street damage restoration fee is assessed against all companies that excavate CCSF streets, including utility companies providing gas, electricity, water, sewer, telephone and cable services. CCSF points to a lack of evidence of discriminatory assessment of these fees. TSC asserts that if PG & E were exempt from the street damage restoration fee the fee would be discriminatory. As PG & E's potential exemption has not yet been determined by the court, this is a remaining

factual dispute between the parties. CCSF argues that this dispute is not material because other utilities, including water, sewer and telephone service providers, are subject to the excavation fees and thus, the fees are not discriminatory even if one utility is provided an exemption. The issue is, therefore, the interpretation of "general applicability" and "unduly discriminatory" in 47 U.S.C. § 542(g)(2)(A): does the exemption of one utility from a fee mean that the fee is not generally applicable or that it is unduly discriminatory? Neither party discusses this issue; given this lack of input and the fact that this issue may be moot, depending on the resolution of other claims, the court finds it unnecessary to decide this issue at this time. The court therefore DENIES without prejudice CCSF's motion for summary judgment (Doc. # 43)[2] with respect to TSC's 47 U.S.C. § 542 claim.

### B

■ CCSF also moves for summary judgment on TSC's state law claims insofar as they request money damages. The California Tort Claims Act (CTCA) requires that all claims against the government for money damages be presented to the relevant government entity and rejected by that entity before a claimant may file suit. See *Baines Pickwick Ltd. v. City of Los Angeles*, 72 Cal.App.4th 298, 85 Cal.Rptr.2d 74, 76 (1999). TSC admits that it has not complied with the CTCA, but argues that it is not required to do so because it primarily seeks injunctive and declaratory relief. See TSC Opp. (Doc. # 43) at 10. Injunctive and declaratory relief is exempt from the CTCA. See *Qwest Communications Corp. v. City of Berkeley*, 146 F.Supp.2d 1081, 1090–91 (N.D.Cal.2001). Asserting that the money

---

**2.** For the sections of this order dealing only with CCSF's arguments regarding TSC's   claims, all doc # references are to case no. 00–2311 VRW.

damages it seeks are "incidental" to the equitable relief requested, TSC analogizes to employment discrimination claims in which back pay demands are deemed incidental to the equitable relief of reinstatement. TSC cites *Qwest Communications* for the proposition that money damages incidental to equitable relief are not barred by noncompliance with the CTCA. See *id.* Contrary to TSC's assertion, *Qwest Communications* is not favorable to its position. In *Qwest Communications,* the court dismissed plaintiff's claim for money damages because of plaintiff's failure to comply with the CTCA; the court held that plaintiff's request for injunctive relief was not barred by the CTCA. 146 F.Supp.2d at 1091. As with the plaintiff in *Qwest Communications,* TSC's claims for money damages are not incidental to its request for injunctive and declaratory relief. TSC asserts claims for money damages in its Contract Clause claims, its breach of contract claim and its breach of the covenant of good faith and fair dealing claim and pleads a general prayer for compensatory damages common to all claims. See TSC Compl. (Doc. # 1) at ¶¶ 47, 91, 95. TSC alleges damages in excess of $250,000 for its Contract Clause claim alone. See *id.* at ¶ 47.

TSC also argues that CCSF should not be able to rely upon the CTCA rule, as its only purpose in the context of contract claims is to provide notice to the governmental entity. As TSC previously filed suit against CCSF and has paid the fees under protest, TSC argues that the CTCA should not apply to bar its claims. TSC relies upon *Department of Parks and Recreation v. West–A–Rama,* 35 Cal.App.3d 786, 111 Cal.Rptr. 197 (1973) for this argument. In *West–A–Rama,* the government sued a concession operator, West–A–Rama, and West–A–Rama counterclaimed for breach of contract without filing a CTCA claim first. The court found that West–A–Rama's counterclaim was not barred, reasoning that in the context of contract claims, the CTCA was only a notice statute because the contract claim did not implicate sovereign immunity. *Id.,* 111 Cal.Rptr. at 202. The *West–A–Rama* court also relied upon the fact that the government sued the contractor in that the government had waived its right to object pursuant to the CTCA. Finally, the court noted that the purposes of the CTCA, "to permit the governmental entity whom the claim is asserted to investigate promptly and to have an opportunity to settle without litigation," had been met. *Id.* As the plaintiff, the government investigated the underlying claim and had determined that litigation was necessary.

The court declines to extend *West–A–Rama* to this case. Unlike the situation in *West–A–Rama,* in which the government entity initiated suit, TSC brought the initial litigation without satisfying the intent of the CTCA to afford CCSF an opportunity to settle the dispute before litigation. Nor did TSC's payment of the fees under protest provide CCSF with notice of its contract and constitutional claims and, therefore, an ability to settle without litigation. To be sure, the prospect of resolving the present claim short of litigation was remote, but that reality is not a ground upon which to relieve TSC of compliance with the CTCA.

Finally, in a footnote, TSC, while acknowledging a split of authority on the issue, argues that the CTCA does not apply to contract claims. This court has previously ruled that the CTCA applies to contract claims and declines to revisit that ruling. See *Wright v. Bay Area Rapid Transit District,* 1990 WL 456964, *3, 1990 U.S. Dist LEXIS 16040, *10 (N.D.Cal. 1990). The court finds that TSC was required to file a CTCA claim with respect to its state law claims. As TSC failed to do so, the court DISMISSES with prejudice TSC's state law claims (TSC's second,

fourth, and sixth through eleventh causes of action) insofar as they seek money damages instead of injunctive relief.

## C

■ CCSF asserts that TSC has failed to comply with the statute of limitations for all of its state law claims. CCSF asserts that the statute of limitations should be 120 days pursuant to Cal. Govt. Code § 66022. Section 66022(a) states:

> Any judicial action or proceeding to attack, review, set aside, void, or annul an ordinance, resolution, or motion adopting a new fee or service charge, or modifying or amending an existing fee or service charge, adopted by a local agency, as defined in Section 66000, shall be commenced within 120 days of the effective date of the ordinance, resolution, or motion.

Cal. Govt. Code § 66022(a).

TSC provides several arguments why the 120 day limitation should not apply to TSC's claims. First, with respect to its contract claims, TSC argues that California Govt. Code § 66022 does not apply. Second, with respect to its state constitutional claims, TSC argues that under the doctrine of continuing violations, the statutes of limitations for these claims run anew with each assessment of a fee. See *id.* Finally, with respect to TSC's remaining state law claim under Cal. Govt. Code § 66014, TSC argues that the statute of limitations should be equitably tolled in this case. Pl. Opp. (Doc. # 43) at 6. The court considers these arguments in turn.

### 1

TSC argues that its state law contract claims do not fall within § 66022 and that the applicable statute of limitations for

these claims is four years pursuant to Cal. Civ. Code § 337. Section 66022 applies to an action "to attack, review, set aside, void, or annul an ordinance * * * adopting a new fee * * *." TSC's contract claims do not attack the ordinance in any way; they merely allege that by enforcing the ordinance, CCSF has breached its contract with TSC. In arguing against this straightforward proposition, CCSF relies upon a recent California Supreme Court decision which holds that actions for refunds of utility fees as excessive pursuant to Cal. Govt. Code § 54999.3 are subject to § 66022. See *Utility Cost Management v. Indian Wells Valley Water,* 26 Cal.4th 1185, 114 Cal.Rptr.2d 459, 461, 36 P.3d 2, 3 (2001). This action, however, facially attacked the imposition of the fees; there was no contract between the parties which imposition of the fees allegedly breached. In addition, imposing a 120–day statute of limitations for breach of contract claims would also provide an anomalous result. CCSF would simply need to pass a resolution any time it wanted to breach a contract to obtain a statute of limitations less than one tenth the normal time. The court therefore finds § 66022 inapplicable to general contract claims. TSC's contract claims are timely.

### 2

■ TSC also asserts that the statute of limitations does not bar its state constitutional claims because the statute of limitations runs anew with each assessment of an unconstitutional fee, that is, that the doctrine of continuing violations applies. The California Supreme Court's interpretation of the doctrine of continuing violations is controlling on this court with respect to TSC's *state* constitutional claims.[3]

---

**3.** The court notes that the Ninth Circuit's interpretation of the continuing violations doctrine applies to TSC's *federal* constitutional claims. See *Morales v. City of Los Angeles,* 214 F.3d 1151, 1153–54 (9th Cir.2000). The

Ninth Circuit's interpretation of that doctrine differs from that of the California Supreme Court. Compare *Knox v. Davis,* 260 F.3d 1009, 1013 (9th Cir.2001) with *Howard Jarvis Taxpayers Assoc. v. City of La Habra,* 25

See *Daniels v. Fesco Division of Cities Service Co.*, 733 F.2d 622, 623 (9th Cir. 1984). In *Howard Jarvis Taxpayers Assoc v City of La Habra*, the California Supreme Court held that each imposition of a utility tax by a municipality constituted an ongoing constitutional violation upon which the limitations period begins anew with each collection. 25 Cal.4th 809, 107 Cal.Rptr.2d 369, 378, 23 P.3d 601 (2001). CCSF attempts to distinguish *Howard Jarvis*, noting that the Court limited itself to the specific statute before it:

we hold only that, where the three-year limitations period for actions on a liability created by statute (Code Civ. Proc., § 338, subd. (a)) applies, and no other statute or constitutional rule provides differently, the validity of a tax measure may be challenged within the statutory period after any collection of the tax, regardless of whether more than three years have passed since the tax measure was adopted.

107 Cal.Rptr.2d at 381, 23 P.3d 601. While the *Howard Jarvis* court limited the holding court to the facts of the case before it, its reasoning still applies here. As the court notes: "Cities and counties must eventually obey the state laws governing their taxing authority and cannot continue indefinitely to collect unauthorized taxes." *Id.* The court will apply the continuing violations doctrine to TSC's claims alleging violation of the California Constitution.

3

■ TSC's remaining state law claim is a claim for violation of Cal. Govt. Code § 66014. TSC argues that § 66022 only applies to facial challenges to an ordinance. Section 66014, however, is a facial challenge. In addition, by its plain language, the 120 day statute of limitations under § 66022 applies to § 66014 claims. See Cal. Govt. Code § 66022(c). TSC's

Cal.4th 809, 107 Cal.Rptr.2d 369, 378, 23

§ 66014 claim is subject to a 120–day statute of limitations.

4

■ TSC's final argument is that equitable tolling applies to its state law claims. TSC originally filed this action on April 30, 1999. See Compl. (Doc. # 99–2081:1). Because TSC waited almost one year to serve CCSF, the court dismissed the lawsuit without prejudice. See 6/28/00 Order (Doc. # 99–2081:21) at 4. TSC then immediately filed the instant suit on June 29, 2000. See Compl. (Doc. # 00–2311:1). CCSF argues that equitable tolling cannot apply to an action based on a previous dismissal. CCSF cites several cases which state that dismissal without prejudice is interpreted as if no action were filed. See, e.g., *Powell v. Starwalt*, 866 F.2d 964, 966 (7th Cir.1989); *Sperling v. White*, 30 F Supp 2d 1246, 1253–54 (C.D.Cal.1998). There are, however, exceptions, including the equitable tolling doctrine. The court declines to rule that, as a matter of law, equitable tolling can never apply when a complaint is dismissed under F.R.C.P. 4(m).

■ In order to benefit from equitable tolling, under California law TSC must show "(1) timely notice to the defendant in the first claim; (2) lack of prejudice to [the] defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Donoghue v. County of Orange*, 848 F.2d 926, 931 (9th Cir.1988). In its order dismissing TSC's original action under F.R.C.P. 4(m), the court stated:

Plaintiff willfully chose not to serve the original complaint on defendant for almost an entire year in order to strength-

P.3d 601 (2001).

en its negotiation position with defendant.

6/28/00 Order (Doc. # 99–2081:21) at 4. This does not constitute good faith and reasonable conduct. The court finds that equitable tolling does not apply.

### D

Finally, CCSF asserts that TSC's federal constitutional claims are barred by the one year statute of limitations imposed for § 1983 claims. See CCSF Reply (Doc. # 99) at 6. TSC admits that a one year statute of limitations applies, but argues that it runs anew upon each assessment of a fee and that the claim accrued when TSC first paid a fee, rather than the date on which the ordinance was enacted. See TSC Surreply (Doc. # 54) at 5, 9.

The accrual of a federal constitutional claim is determined with reference to federal law. See *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153–54 (9th Cir. 2000). Federal law states that an action accrues when the "plaintiff knows or has reason to know of the injury which is the basis for the action." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir.2001). In general, "[a] limitations period ordinarily does not begin to run until the plaintiff has a complete and present cause of action." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 195, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997) (internal quotation omitted). TSC argues that its claims did not accrue until September 1999, when it first paid a street damage restoration fee, because until that time, TSC had not suffered a compensable injury. TSC's complaint, however, bases its action on the enactment of the ordinance in question. See Compl. (Doc. # 1) at ¶ 19. The court finds that TSC's federal causes of action accrued on the effective date of the ordinance, January 1, 1999.

TSC also argues that the continuing imposition of unconstitutional fees was a continuing violation and therefore the statute of limitations is tolled until the violations cease. In order to succeed under a continuing violations theory, TSC must show that each imposition of a fee constituted a new injury. See *Knox*, 260 F.3d at 1012. Continuing impact of a past injury is not a separate violation. See *id.* In *Knox*, the plaintiff, a criminal defense lawyer, received a letter formally revoking her visitation privileges to state prisons. Plaintiff argued that every time she was barred from visiting her clients was a new constitutional injury. The Ninth Circuit held that the constitutional injury accrued when the plaintiff received notice that she would be permanently barred from visiting her clients in prison. *Id.* at 1014; accord *Pisciotta v. Teledyne Indus.*, 91 F.3d 1326, 1332 (9th Cir.1996) (declining to apply continuing violations doctrine to continuing denial of monthly benefits in ERISA case).

Here, TSC, like the plaintiff in *Knox*, argues that each fee imposed upon TSC constitutes a new injury. Unlike in *Knox*, however, the fee imposed is not an inevitable consequence of the original injury. In *Knox*, plaintiff received a letter which stated that she was permanently barred from visiting her client. Here, TSC may seek a waiver from a fee imposed. In addition, while in *Knox*, plaintiff knew her *entire* injury upon receipt of the letter, that is, that she would never gain visitation rights to her client, TSC could not know the extent of its future injury at the time the ordinance was passed because it could not know what excavation would be required and whether it would receive a fee waiver in the future. In *Knox*, the court relied upon *Hoesterey v. City of Cathedral City*, which held that the continuing violations doctrine did not apply because the plaintiff "[had] notice of all allegedly wrongful acts that he later sought to challenge." 945 F.2d 317, 319 (9th Cir.1991). Because TSC did not have "notice of all allegedly wrongful acts" challenged in this

lawsuit until imposition of each additional fee, TSC has alleged a continuing violation of its constitutional rights.

This case is therefore more similar to *Virginia Hospital Ass'n v. Baliles,* which applies the continuing violations doctrine to hold that "continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations." 868 F.2d 653, 663 (4th Cir.1989). CCSF's argument that TSC's federal constitutional claims are barred by the statute of limitations fails.

In sum, with respect to TSC's remaining contract claims, the court finds that these claims are not barred by the four year statute of limitations. With respect to TSC's remaining claims based on the California Constitution, the court finds that these actions are not barred by the statute of limitations because the continuing violations doctrine applies. TSC's § 66014 claim is barred by the 120 day statute of limitations found in § 66022 because equitable tolling does not apply. All TSC's state law claims are limited to declaratory and injunctive relief rather than money damages. Finally, the court finds that TSC's federal constitutional claims are not barred by the statute of limitations.

### IV

Having disposed of CCSF's arguments specific to TSC, the court turns to CCSF's summary judgment with respect to arguments common to both TSC and PG & E.

### A

■ CCSF first argues that PG & E and TSC's due process claims are superseded by their Contract Clause claims.[4] In *Armedariz v. Penman,* the Ninth Circuit stated that substantive due process claims cannot be asserted when other explicit textual provisions provide constitu-

tional protection: *"Graham [v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)] reflects the principle that courts should not expand the constitutional protections afforded by the Bill of Rights in those areas specifically addressed by the first eight amendments." 75 F.3d 1311, 1325 (9th Cir.1996). The Contract Clause, is not, of course, a part of the Bill of Rights. Still, as the Supreme Court explained in *Soldal v. Cook County,* its ruling in Graham was "guided by the fact that, in that case, both provisions targeted the same sort of governmental conduct and, as a result, we chose the more explicit textual source of constitutional protection over the more generalized notion of substantive due process." 506 U.S. 56, 70, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (internal quotation marks omitted). The Court noted, however, that "certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *Id.*

The issue is therefore whether "the conduct that plaintiffs allege is the type of government action that the [Contract Clause] regulate[s]." *Armendariz,* 75 F.3d at 1324. Plaintiffs argue that their due process claims are not superseded by their Contract Clause claims because the due process claims are based on conduct that falls outside the Contract Clause. Plaintiffs allege, inter alia, that:

> the Excavation Code and the Regulations do not specifically require that the fees collected be spent on street repairs allegedly caused by excavations * * *.

See TSC Compl. (Doc. # 00–2311:1) at ¶ 61. PG & E provides similar allegations. See PG & E FAC (Doc. # 99–2071:18) at ¶ 66. Plaintiffs allege a violation of the Due Process Clause because CCSF has taken its property and their contractual rights without due process of law. Plain-

---

**4.** While the court recognizes that the parties' claims are based on two separate Contract Clauses, for simplicity it refers to these claims collectively as "Contract Clause claims."

tiffs assert, inter alia, that the street damages restoration fee constitutes a transfer of money from plaintiff to the general public because the fees are not used solely to recoup the costs of trench damage. This allegation describes conduct unaffected by the Contract Clause; CCSF does not unilaterally change its franchises, thereby allegedly violating the Contract Clause, when it allocates fees paid into specific funds. The court finds that plaintiffs have alleged conduct that falls outside the ambit of the Contract Clause and DENIES CCSF's motion for summary judgment with respect to PG & E and TSC's claims for violation of the Due Process Clauses of the United States and California Constitutions.

### B

■ CCSF mounts a facial attack on this court's jurisdiction over PG & E and TSC's claims under Article XIII of the California Constitution and PG & E's claim under Cal. Govt. Code § 66014[5], arguing that the claims are jurisdictionally barred by the Tax Injunction Act, 28 U.S.C. § 1341. The Tax Injunction Act states in full:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341.

The Ninth Circuit has held that three factors inform whether a municipal fee constitutes a tax for the purposes of the Tax Injunction Act: (1) the entity that imposes the charge; (2) the parties to whom the charge is imposed; and (3) whether the fund collected for the charge are expended for general public purposes or used for regulation or benefit of the

parties on whom the charge is imposed. See *Bidart Bros. v. California Apple Comm'n*, 73 F.3d 925, 931 (9th Cir.1996). Whether a fee is a tax under the Tax Injunction Act is a question of law. See *Wright v. Riveland*, 219 F.3d 905, 911 (9th Cir.2000).

Here, the city councils imposed the fees, suggesting that the fees are taxes. *Bidart Bros.*, 73 F.3d at 931. As the fees are imposed on a small, discrete group of entities rather than a large, diffuse population, the second factor suggests that the fees are not taxes. See *id.* at 931. Where the first two factors are not dispositive, courts "emphasize the revenue's ultimate use" to determine a fee's status. *Id.* at 932.

Consistent with its facial challenge to the court's jurisdiction, CCSF argues that the fees are taxes because plaintiffs allegations, if true, show that the revenue's ultimate use is for the benefit of the general public and that the fees are therefore a tax. See CCSF Reply (Doc. # 99–2071:99) at 1. Plaintiffs allege that the excavation fees exceed the estimated cost of providing administrative services and that "the additional fees were imposed to raise revenue and to shift the cost of street maintenance and improvement from CCSF to CCSF's excavators." TSC Compl. (Doc. # 00–2311:1) at ¶ 16; see also PGE FAC (Doc. # 99–2071:18) at ¶ 57. These allegations suggest that the fees meet the definition of a tax under the Tax Injunction Act. Plaintiffs also allege that the fee constitutes an excess franchise fee. See TSC Compl. (Doc. # 00–2311:1) at ¶ 69; see also PG & E FAC (Doc. # 99–2071:18) at ¶ 40. Franchise fees, in general, are not taxes under the Act. *City of Dallas v. FCC*, 118 F.3d 393, 397–98 (5th Cir.1997). Thus, plaintiffs' allegations are not dispositive of the issue. The court looks to the ordinance, which contains ample discussion of its use

---

**5.** The court granted summary judgment in favor of CCSF on TSC's § 66014 finding

TSC's claim was barred by the statute of limitations. See supra III(C)(3)-(4).

and purpose, rather than plaintiffs' allegations in order to determine whether the Tax Injunction Act applies to bar this court's jurisdiction. Accord *Qwest Communications Corp. v. City of Berkeley,* 146 F.Supp.2d 1081, 1092 (N.D.Cal.2001).

The ordinance states:

The City's streets are a valuable public asset which the City holds in trust for its citizens. * * * [I]t is reasonable and in the public interest to impose a Street Damage Restoration Fee to be paid by excavators in order to recover the increased repaving and reconstruction costs caused by excavation which are currently born by taxpayers.

TSC RJN (Doc. # 00–2311:20), Exh. O at § 1(i). The ordinance also provides that a special fund shall be created for receipt of the fees, see id at § 1(k); this fund is to be used for repaving streets, with "refund[s] granted to excavators in the event that proceeds from the fee exceed costs incurred that are reasonably attributable to excavation." *Id.* at § 1(a).

By its own terms, the ordinance imposes fees for the public benefit, in order to maintain public streets. The fees are segregated in a special fund limited to reimbursing CCSF for repaving costs due to excavation; any excess revenue is refunded to the excavators. The fees therefore recoup the cost of excavating rather than raise revenue for the public interest. This is more similar to a regulation than a tax. The court finds that because the fees imposed are limited to recouping the costs of excavation, they are not a tax under the Tax Injunction Act. The court is therefore unpersuaded by CCSF's argument that the Tax Injunction Act applies to plaintiffs' claims under Article XIII of the California Constitution and California Government Code § 66014 and DENIES CCSF's motion for summary judgment (Doc # 43) with respect to PG & E and TSC's Article XIII claim and PG & E's § 66014 claim.

## C

■ Next, CCSF challenges PG & E and TSC's claim for estoppel, asserting that plaintiffs have not properly pled estoppel. In order to prevail on estoppel, plaintiffs must show:

(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.

*Strong v. County of Santa Cruz,* 15 Cal.3d 720, 125 Cal.Rptr. 896, 898, 543 P.2d 264 (1975). Citing federal law, CCSF claims that plaintiffs must further show affirmative misconduct in order to prevail on an estoppel claim against a governmental entity. See CCSF Reply (Doc. # 99–2071:99) at 17. California law, however, differs somewhat from its federal counterpart, requiring a more fact-laden assessment whether estoppel "is necessary to avoid grave injustice and [ ] the result will not defeat a strong public policy." See *Hughes v. Bd. of Architectural Examiners,* 17 Cal.4th 763, 72 Cal.Rptr.2d 624, 644, 952 P.2d 641 (1998). As this is a state law claim, California law applies. Plaintiffs allege that CCSF intended that plaintiffs rely on its conduct in negotiating their franchises, leading plaintiffs to believe that the negotiated fees covered all costs associated with street excavation. See TSC Compl. (Doc. # 00–2311:1) at ¶ 80; PG & E FAC (Doc. # 99–2071:18) at ¶ 81. Plaintiffs do not allege that CCSF knew that the negotiated fees did not cover all costs at the time the contracts were created. Plaintiffs have therefore failed to allege the first prong of the estoppel test.

CCSF moves for summary judgment on this basis. Plaintiffs point out, however,

that the motion is more aptly described as a motion to dismiss and request leave to amend their pleadings if necessary. See Pl. Opp. (Doc. # 99–2071:91) at 22 n. 11. As CCSF challenges only the sufficiency of plaintiffs' complaints, the court treats the motion as a motion to dismiss. See *Mullis v. United States Bankruptcy Court,* 828 F.2d 1385, 1387 n. 6 (9th Cir.1987). The court therefore DISMISSES PG & E and TSC's estoppel claims against CCSF without prejudice. PG & E and TSC may file amended complaints by July 31, 2002.

### D

CCSF argues that PG & E and TSC's Contract Clause claims, to the extent they are based on provisions other than the street damage excavation fee, are, as a matter of law, reasonable exercises of CCSF's police power and therefore summary judgment against PG & E and TSC is appropriate. This amounts to CCSF's argument that no set of facts would demonstrate that the provisions are unreasonable or unnecessary. Plaintiffs argue that future discovery will demonstrate that the various provisions have no legitimate basis and are unreasonable or unnecessary. The parties have stipulated that discovery regarding these provisions would not commence until after the court decided plaintiffs' motions for summary judgment with respect to the street damage restoration fee. See 5/14/01 Order (Doc. # 99–2071:62). Thus, summary judgment is inappropriate at this time. See F.R.C.P. 56(f). The court DENIES CCSF's motion for partial summary judgment without prejudice with respect to PG & E and TSC's Contract Clause claims against CCSF relating to provisions other than the street damage restoration fee.

With respect to PG & E, the court DENIES CCSF's summary judgment motion on PG & E's due process claims, violation of Article XIII of the California Constitution claim and § 66014 claim. The court further DENIES partial summary judgment with respect to PG & E's Contract Clause claims against CCSF based on provisions other than the street damage restoration fee. Finally, the court DISMISSES PG & E's estoppel claims without prejudice. PG & E may file and serve an amended complaint by July 31, 2002.

With respect to CCSF's summary judgment and partial summary judgment motions against TSC, the court grants summary judgment with respect to TSC's § 66014 claim, DENIES CCSF's partial summary judgment motion regarding TSC's federal Contract Clause claim challenging provisions other than the street damage restoration fee, DENIES without prejudice CCSF's motion for summary judgment with respect to TSC's 47 U.S.C. § 542 claim and GRANTS in part and DENIES in part summary judgment with respect to TSC's other state law claims; partial summary judgment on these claims is appropriate insofar as they request money damages. In addition, the court DISMISSES TSC's estoppel claim without prejudice. TSC may file an amended complaint by July 31, 2002.

### V

■ Having disposed of CCSF's motions for summary judgment and partial summary judgment, the court turns to plaintiffs' motions for summary judgment and partial summary judgment. On October 31, 2000, this court denied cross summary judgment motions in the two PG & E cases. See 10/31/00 Order (Doc. # 51).[6]

---

**6.** The court returns to its convention of referring only to case no. 99–1805 VRW unless  otherwise noted.

While this order did not address the specific factual scenarios with respect to TSC and TCI, these scenarios are, in all relevant respects, identical for the purposes of the current motions. Plaintiffs move for partial summary judgment on their Contract Clause claims under both the United States Constitution and the California Constitution insofar as these claims challenge the street damage restoration fee. TCI and TSC also move for summary judgment on their claims alleging violation of 47 U.S.C. § 542. As the court has declined to decide at this time whether exempting one utility from an otherwise generally applicable fee constitutes a discriminatory fee under 47 U.S.C. § 543(g)(2)(A), the court DENIES without prejudice TSC and TCI's motions for summary judgment with respect to their 47 U.S.C. § 542 claims. The court now turns to plaintiffs' motions for partial summary judgment with respect to their Contract Clause claims.

As the court recognized in its October 31, 2000, order, the analysis of a Contract Clause claim under the California Constitution is identical to the analysis under the United States Constitution. See 10/31/00 Order (Doc. # 51) at 8 (citing *Calfarm Ins. Co. v. Deukmejian*, 48 Cal.3d 805, 826–31, 258 Cal.Rptr. 161, 771 P.2d 1247 (1989)). The court therefore discusses plaintiffs' federal Contract Clause claim only.

To prevail on a claim under the Contract Clause, a party must show (1) a "substantial impairment of a contractual relationship" and (2) that the impairment was not "reasonable and necessary to fulfill an important public purpose." *Univ. of Hawaii Professional Assembly v. Cayetano*, 183 F.3d 1096 (9th Cir.1999) (quoting *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992) and *Seltzer v. Cochrane*, 104 F.3d 234, 236 (9th Cir.1996)).

The first inquiry is further divided into three parts: (1) whether a contractual relationship existed; (2) whether the contract was impaired; and (3) whether the impairment was substantial. *Univ. of Hawaii*, 183 F.3d at 1101. If a substantial impairment of a contractual relationship to which a governmental entity is a party is shown, the burden shifts to the governmental entity to demonstrate that the impairment was reasonable and necessary to fulfill an important public purpose. *Univ. of Hawaii*, 183 F.3d at 1106. Courts have also held that when a governmental entity is a party to the contract allegedly impaired, less deference to the governmental entity is appropriate due to the "self-serving" nature of the governmental entity's action. *Id.* at 1107.

A

Here, all parties agree that the franchises constitute contractual relationships between plaintiffs and defendants, satisfying the first prong of the test. The court's October 31, 2000, order focused on the second prong of the test, deciding that whether the contract was impaired was uncertain given the factual record available at that time. See 10/31/00 Order (Doc. # 51) at 18. In its order, the court specifically stated that the preliminary material factual issue was whether the parties knew of the structural damage due to trenching when they entered into the franchises. *Id.* The court concluded:

> PG & E must show that the parties to the franchises did not intend for the repair cost provisions to include inherent adjacent trench damage.

See 10/31/00 Order (Doc. # 51) at 18. By demonstrating this, PG & E would show that its franchises were impaired by the street damage restoration fee and trench cut fee imposed by the defendants. See *id.* at 13. The court reasoned that if the

parties did not intend the franchises to include the inherent trench damage caused by excavation, the cities could not amend the franchises to include such fees now. CCSF and Union City both deny any knowledge of such damage until at least the 1990s, approximately 30 years after the creation of the most recent franchise. Therefore, they could not have intended such damage to be covered by the repair provisions.

CCSF and Union City also argue that because they retained their police power under the franchises, they are allowed to modify unilaterally the terms of the franchise, including imposing an additional fee for street repair. The court has already found this argument unpersuasive. See 10/31/00 Order (Doc. # 51) at 11–13.

Finally, CCSF and Union City argue that because no express contractual provision applies to the fees, the contract cannot be impaired. In *University of Haw. Prof'l Assembly v Cayetano*, the Ninth Circuit found that an implied term of a contract, based on course of dealing, could provide the basis for contractual impairment. 183 F.3d 1096, 1102 (9th Cir.1999). This case is indistinguishable. In *University of Hawaii*, plaintiffs argued that the timing of paychecks was an implied term of a collective bargaining agreement based on the twenty five year course of dealing in which plaintiffs were paid on the fifteenth and last day of each month. Here, plaintiffs argue that no additional "restoration fee" may be charged based on over thirty years of prior course of dealing.

CCSF points to a recent decision by Judge Illston in *Rui One Corp v. City of Berkeley*. See Statement of Recent Decision (Doc. # 00–2311:59). In *Rui One*, plaintiff, a restaurant that leased its space from Berkeley, argued that Berkeley's living wage ordinance, which required Rui One to pay its workers higher wages and provide more employee benefits, was an

unconstitutional unilateral increase in its rent. Judge Illston held that the rental contract was not impaired because no term in the lease was related to the wages Rui One paid. In essence, the relationship between the ordinance in question, regulating wages, and the allegedly impaired contract, leasing property, was tangential at best. In this case, however, the relationship between the contract with the government and the ordinance is direct: plaintiffs are required under their franchises to pay for excavation and repairs; they now have an additional cost for these activities.

The court finds that the because franchise contracts contemplate that no additional "street damage restoration fee" would be imposed, plaintiffs have demonstrated that CCSF and Union City impaired the franchises.

### B

As plaintiffs have demonstrated impairment of the franchises, the next inquiry is whether they can also demonstrate substantial impairment. Because the parties did not contemplate that the cost of repairing inherent trenching damage would fall under the repair cost provision, the fees are simply a unilateral increase in the franchise fee. Such an increase is a substantial impairment. See, e g, *Boise Artesian Hot and Cold Water Company v. Boise City*, 230 U.S. 84, 33 S.Ct. 997, 57 L.Ed. 1400 (1913); *City of New Orleans v. Great Southern Telephone & Telegraph Co.*, 3 So. 533 (La.1888). CCSF argues that any impairment is insubstantial because an "express term" of the contract has not been modified. As discussed above, even if only an implied term has been modified, *University of Hawaii* makes clear that such an impairment can constitute a violation of the Contract

Clause. *Univ. of Hawaii,* 183 F.3d at 1102.

### C

Having found that the fees substantially impair plaintiffs' contracts with Union City and CCSF, the burden shifts to Union City and CCSF to demonstrate that the fees are reasonable and necessary to fulfil an important public purpose. See *Univ. of Hawaii Professional Assembly v. Cayetano,* 183 F.3d 1096, 1106 (9th Cir. 1999). Union City and CCSF are unable to do that here. See *id.* In *Univ. of Hawaii,* the Ninth Circuit rejected the state of Hawaii's "budgetary problems" as a justification for an impairment of employment contracts that was designed to save the state money. *Id.* at 1107. The court explained: "[a]lthough perhaps politically more difficult, numerous other alternatives exist which would more effectively and equitably raise revenue." *Id.* For example, Hawaii could have raised taxes or restricted tax credits. *Id.*

Likewise, the Supreme Court in *United States Trust v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977) noted: "A governmental entity can always find a use for extra money, especially when taxes do not have to be raised. If a state could reduce its financial obligations whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all." *Id.* at 26.

As in *Univ. of Hawaii,* Union City and CCSF have other means to pay for paving their streets. Union City and CCSF can shift funds from some other activity, perhaps using the revenues from the franchise fees themselves. Or Union City and CCSF can simply raise taxes. When the public purpose at issue is raising money, there are always ways for a municipality to do so without reneging on government contracts.

As CCSF and Union City have failed to meet their burden of demonstrating that the fees were reasonable and necessary, the court finds that plaintiffs are entitled to partial summary judgment with respect to their Contract Clause claims under both the United States and California Constitutions. The court therefore GRANTS partial summary judgment with respect to these claims insofar as they challenge the street damage restoration fee or trench cut fee.

### VI

In summary, the court:

- GRANTS PG & E's motion for partial summary judgment (Doc. #99–2071:83) of its first and second causes of action against CCSF alleging violation of the Contract Clause of the United States and California Constitutions, respectively;
- GRANTS PG & E's motion for partial summary judgment (Doc. #99–1805:74) of its first and second causes of action against Union City alleging violation of the Contract Clause of the United States and California Constitutions, respectively;
- GRANTS TCI's motion for partial summary judgment (Doc. #99–1979:30–2) of its first and second causes of action against Union City alleging violation of the Contract Clause of the United States and California Constitutions, respectively;
- DENIES without prejudice TCI's motion for summary judgment (Doc. #99–1979:30–1) with respect to TCI's fifth cause of action alleging violation of 47 U.S.C. § 542 against Union City;
- GRANTS in part and DENIES in part TSC's motion for partial summary judgment (Doc. #00–2311:18–1) of its first and second causes of action against CCSF alleging violation of the

Contract Clause of the United States and California Constitutions, respectively;

- DENIES CCSF's summary judgment motion against PG & E (Doc. # 99–2071:90);
- GRANTS in part, DENIES in part and DENIES without prejudice in part CCSF's summary judgment motion against (Doc. # 00–2311:43).
- DISMISSES without prejudice PG & E's estoppel claim against CCSF. PG & E may file an amended complaint by July 31, 2002.
- DISMISSES without prejudice TSC's estoppel claim against CCSF. TSC may file an amended complaint by July 31, 2002.
- DISMISSES with prejudice TSC's state law claims insofar as they request monetary damages.
- TERMINATES all remaining pending motions.

IT IS SO ORDERED.